**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3104
_____

MISTERNOVO BAMACA-CIFUENTES;
BYRON DONALDO BAMACA-BAUTISTA;
ABNER ABDIEL BAMACA-BAUTISTA,

Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,

Respondent
_____

On Petition for Review of a Final Order
Of the Board of Immigration Appeals
(Agency Nos. A070-673-932, A097-973-615, A097-761-129)
Immigration Judge: Steven A. Morley
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 6, 2017
_____

Before: McKEE, COWEN and FUENTES, *Circuit Judges*.

(Opinion Filed: August 29, 2017)
_____

Theodore J. Murphy, Esq.
Murphy Law Firm
320 North High Street
West Chester, PA 19380

*Attorney for Petitioners*

Todd J. Cochran, Esq.
United States Department of Justice

Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

*Attorneys for Respondent*

———————

OPINION OF THE COURT
———————

McKEE, *Circuit Judge*.

## I. INTRODUCTION

Petitioners ask us to decide if the Board of Immigration Appeals abused its discretion by denying an untimely motion to reopen removal proceedings arising from a request for protection under the U.N.'s Convention Against Torture or "CAT." Their petition requires us to determine if the time bar contained in 8 C.F.R. § 1003.2(c) applies to motions to reopen based on a request for withholding of removal under the CAT. We have previously held that the time limitation does apply to these motions to reopen, but we have only done so in a non-precedential opinion that is not binding on this court. We now take the opportunity to affirm that principle in this precedential opinion. Accordingly, for the reasons that follow, we will hold that the procedural requirements in 8 C.F.R. § 1003.2(c) apply with equal force to motions to reopen removal proceedings involving protection under the CAT. We will therefore deny this petition for review.

## II. FACTS AND PROCEDURAL HISTORY

Misternovo Bamaca-Cifuentes and his sons, Byron Donaldo Bamaca-Bautista and Abner Abdiel Bamaca-Bautista[1] are natives and citizens of Guatemala who first entered the United States in 1990, 1998, and 2004, respectively.[2] In 1999, Misternovo filed an application for suspension of deportation or special rule cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act (NACARA) that listed his sons as derivatives.[3] The United States Citizenship and Immigration Services refused to grant the NACARA application and referred the petition to an Immigration Judge for adjudication.

In May 2008, the Department of Homeland Security initiated removal proceedings against Misternovo and his two sons. They were charged with removability as aliens who were in the United States without being admitted or paroled, under 8 U.S.C. § 1182(a)(6)(A)(i).[4] At a hearing before the Immigration Judge, Misternovo admitted the allegations contained in the Notices to Appeal, and the Immigration Judge ruled that Petitioners were therefore removable as charged.

Later, in January 2012, Misternovo's NACARA application received a full merits hearing before an

---

[1] In order to avoid confusion, we refer to the three petitioners by their first names.

[2] Misternovo left the United States in October 1996, after his wife was deported. He then returned in early 1997.

[3] Misternovo also filed an application for asylum in 1993, alleging persecution based on claimed membership in a particular social group—specifically, the civil patrol in Guatemala—but he later withdrew that application in January 2012.

[4] DHS later added an additional charge of inadmissibility against Abner, alleging that he was an alien who had been convicted of, or who admitted committing the essential elements of, a crime involving moral turpitude, pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(I). In 2007, Abner was convicted of theft and conspiracy in the third degree, in violation of the Delaware Criminal Code.

3

Immigration Judge.[5] The Immigration Judge denied the NACARA application, holding that Misternovo had failed to establish that he had timely registered for benefits pursuant to the *American Baptist Churches v. Thornburgh* settlement agreement;[6] consequently, Petitioners were ordered removed to Guatemala. Petitioners thereafter timely appealed, but the appeal was dismissed by the Board on May 29, 2013. The BIA concluded that the IJ had properly denied Misternovo's NACARA application. Petitioners did not seek review of that Board decision.

More than two years later, on December 21, 2015, Petitioners filed a motion to reopen with the Board based on changed country conditions in Guatemala. DHS opposed the motion and the Board denied it on June 14, 2016. The Board found that Petitioners had "not demonstrated a material change in country conditions since the time they last appeared before the Immigration Judge."[7] This timely petition for review followed.

### III. JURISDICTION AND STANDARD OF REVIEW

The Board of Immigration Appeals had jurisdiction over Petitioners' motion to reopen under 8 C.F.R. §§ 1003.1(b)(3), 1003.2(a), and 1240.15. We have jurisdiction to

---

[5] Misternovo also withdrew his application for asylum at this time.

[6] 760 F. Supp. 796 (N.D. Cal. 1991). Under the terms of what has come to be known as the "ABC settlement agreement," eligible Guatemalans and Salvadorans are entitled to certain immigration benefits. In order to qualify for these benefits, a Guatemalan must have (1) been physically present in the U.S. before September 19, 1990 and (2) sent in an ABC registration form by December 31, 1999. *See* U.S. Citizenship & Immigration Servs., *American Baptist Churches v. Thornburgh (ABC) Settlement Agreement*, https://www.uscis.gov/laws/legal-settlement-notices/american-baptist-churches-v-thornburgh-abc-settlement-agreement (last visited Aug. 10, 2017). In this case, the IJ found that Misternovo had failed to comply with the registration requirement.

[7] App. at 4.

4

review the Board's final orders of removal under Section 242(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1252(a)(1). "We review the denial of a motion to reopen for abuse of discretion and may reverse only if the denial is arbitrary, irrational, or contrary to law."[8]

## IV. DISCUSSION

It is clear from the unambiguous text of 8 C.F.R. § 1003.2(c) that the time and number restrictions in that regulation apply to all motions to reopen removal proceedings, regardless of the motion's underlying basis for relief:

> . . . an alien may file only one motion to reopen removal proceedings (whether before the Board or the Immigration Judge) and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened.[9]

The next section of the regulations, 8 C.F.R. § 1003.2(c)(3), outlines exceptions to the time and number restrictions articulated in 8 C.F.R. § 1003.2(c)(2). The section applicable here is 8 C.F.R. § 1003.2(c)(3)(ii), which provides that:

> The time and numerical limitations set forth in paragraph (c)(2) of this section shall not apply to a motion to reopen proceedings. . . . To apply or reapply for asylum or withholding of deportation based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing.[10]

---

[8] *Contreras v. Att'y Gen. of U.S.*, 665 F.3d 578, 583 (3d Cir. 2012) (citing *Shardar v. Att'y Gen. of U.S.*, 503 F.3d 308, 311–12 (3d Cir. 2007)).
[9] 8 C.F.R. § 1003.2(c)(2).
[10] 8 C.F.R. § 1003.2(c)(3)(ii). This regulation echoes the language of the INA, which states:

> There is no time limit on the filing of a motion to reopen if the basis of the motion is to apply

Thus, the 90-day time bar (and restriction to file only one motion) will be waived for motions to reopen that (1) apply or reapply for asylum or withholding of deportation that are (2) based on changed country conditions and (3) supported by material evidence unavailable at the previous hearing. This changed-circumstances regulation effectively creates a "procedural hurdle that must be overcome before an untimely motion to reopen may be considered."[11]

Despite these procedural hurdles, Petitioners claim that the Board abused its discretion "by not conducting a thorough analysis of any of Petitioners' evidence that support their claims for [relief pursuant to the] CAT."[12] Thus, Petitioners imply that the Board, when evaluating their untimely motion to reopen, should have ignored the time bar of 8 C.F.R. §1003.2 and its exceptions, and proceeded directly to the merits of the underlying CAT claim. This implication, however, is not "supported by the logic of our precedents and by holdings of our sister circuits." [13]

As we noted at the outset, we have already concluded in a non-precedential opinion that 8 C.F.R. §1003.2's time bar applies to motions to reopen removal proceedings seeking withholding of removal under the CAT. In *Thomas v. Attorney*

---

> for [asylum or withholding of removal] and is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous hearing.

8 U.S.C. §1229a(c)(7)(C)(ii).

[11] *Thomas v. Att'y Gen. of U.S.,* 308 F. App'x 587, 593 (3d Cir. 2009) (citing *Shardar,* 503 F.3d at 314).

[12] Petitioners' Br. at 12.

[13] *Go v. Holder*, 744 F.3d 604, 607 (9th Cir. 2014). In addition, the First Circuit has applied 8 C.F.R. § 1003.2(c) to CAT claims. *Gasparian v. Holder*, 700 F.3d 611, 613 (1st Cir. 2012) (holding that new evidence of changed conditions failed to establish a prima facie case of claims for asylum, withholding of removal, or CAT relief).

*General*, we applied the time and number limitations of 8 C.F.R. § 1003.2(c) to a motion to reopen removal proceedings involving relief under the CAT that was based on changed country conditions.[14] The panel's reasoning denying that motion is persuasive, and we adopt our colleagues' analysis in this precedential opinion. We also note that the Court of Appeals for the Ninth Circuit has correctly concluded in *Go v. Holder* that "it appears that every circuit to have considered the question [of whether 8 C.F.R. § 1003.2(c) applies to motions to reopen to seek protection under the CAT] has concluded that it does."[15]

Accordingly, we must now determine whether the Board erred in relying on 8 C.F.R. § 1003.2(c) to reject Petitioners' "Motion to Reopen Removal Proceedings Based on Changed Country Conditions."[16] If the Board correctly concluded that (1) the Petitioners' motion to reopen was untimely, and (2) the untimely motion did not meet the changed country conditions exception, then the Board was procedurally barred from examining the underlying merits of any of Petitioners' claims, including their claim for withholding of removal under the CAT. Thus, in order to resolve Petitioners' appeal, we must determine whether these two conditions were met.

We begin with the timeliness of Petitioners' motion to reopen. Petitioners filed their motion to reopen on December 21, 2015, well past 90 days after the Board's "final administrative decision" on May 29, 2013.[17] Though the Board did not explicitly state that Petitioners' motion was untimely, its consideration of the changed country conditions exception

---

[14] 308 F. App'x at 591.

[15] *Go*, 744 F.3d at 608–09 (collecting unpublished opinions from the Second, Third, Sixth, and Eleventh Circuits)).

[16] App. at 19.

[17] 8 C.F.R. § 1003.2(c)(2); 8 C.F.R. § 1003.39. The government repeatedly characterizes December 21, 2015 as being "nearly four years" after May 29, 2013. Respondent's Br. at 2, 6, 13. Though this is plainly wrong, it does not change the fact that the 90 days had elapsed well before Petitioners filed their motion to reopen.

necessarily implies this finding.[18] The Board clearly did not err in this finding, as the untimely nature of the petition is obvious.

We must next examine whether the Board erred in concluding that Petitioner did not meet the changed country conditions exception. As explained above, we can only reverse the Board's conclusion that the motion did not meet the changed country conditions exception if that decision were "arbitrary, irrational, or contrary to law." [19] It is clear on this record that the decision was not arbitrary, irrational or contrary to law.

To meet the changed country conditions exception, Petitioners had to prove changed conditions in Guatemala by providing evidence that (1) is material, and (2) "was not available and could not have been discovered or presented at the previous hearing."[20] The Board found that Petitioners could not satisfy either prong. In reviewing the motion to reopen, the Board noted that Petitioners provided "applications for asylum, United States government reports and non-governmental reports relating to country conditions in Guatemala; media reports covering Guatemala; an affidavit prepared by [Misternovo]; and, letters from persons in Guatemala advising of the situation there and the changes since [Petitioners] left 23 years ago."[21] Because Petitioners' motion did "not make clear the exact onset of the changed country conditions underlying the current request for relief," the Board considered evidence submitted that postdated January 31, 2012—the date of Petitioners' hearing before the Immigration Judge.[22] After review of Petitioners' evidence, the Board concluded that Petitioners failed to demonstrate a material change in country

---

[18] App. at 3 ("We will consider the respondents' motion based upon the assertion of changed country conditions in the respondents' county of nationality and the evidence that has been submitted in support thereof that postdates the respondents' hearing before the Immigration Judge.").

[19] *Contreras*, 665 F.3d at 583.

[20] 8 C.F.R. § 1003.2(c)(3)(ii).

[21] App. at 3.

[22] App. at 3–4 (citing 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii); *Matter of J-J-,* 21 I&N Dec. 965 (BIA 1997)).

conditions since that date, and therefore refused to reopen the proceedings.[23]

A review of the evidence submitted confirms that it largely dealt with ongoing problems in Guatemala, and did not provide a basis for finding that there was a material change in conditions there after January 2012.[24] Because the Board's decision is supported by the evidence, it cannot be characterized as arbitrary, irrational, or contrary to law. Thus, the Board's failure to address Petitioners' underlying claims for protection under the CAT was not an abuse of discretion.[25]

## V. CONCLUSION

For the foregoing reasons, we will deny the petition for review.

---

[23] App. at 4.

[24] Indeed, Petitioners' evidence summaries note that some of Guatemala's street gangs "have been in operation for decades," discuss the "Continued Corruption and Government Collusion with Criminal Organizations," and detail the ongoing repercussions of the Guatemalan civil war that lasted from 1960–1996. App. at. 26, 30, 94–95.

[25] *Shardar*, 503 F.3d at 314–15.