**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2107
_____

KAYANN ANTOINETTE DARBY,
a/k/a Kayan Darby, a/k/a Larece Knox; a/k/a Kayann Darny
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF
AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A200-414-102)
Immigration Judge: Kuyomars Golparvar
_____

Argued: January 27, 2021

Before: RESTREPO, BIBAS, and PORTER,
*Circuit Judges*.

(Filed: June 17, 2021)
_____

Alexander B. Bowerman **[Argued]**
David Newmann
Hogan Lovells US
1735 Market Street
23rd Floor
Philadelphia, PA 19103

*Counsel for Petitioner Kayann Antoinette Darby*

Sheri R. Glaser **[Argued]**
United States Department of Justice
Office of Immigration Litigation
Room 5214
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

*Counsel for Respondent Attorney General
of the United States of America*

_____

OPINION OF THE COURT
_____

PORTER, *Circuit Judge*.

Kayann Darby is a native and citizen of Jamaica living in the United States. In October 2017, an Immigration Judge ("IJ") sustained charges of removability against Darby after she pleaded guilty to conspiracy to commit mail and wire fraud. The IJ denied her applications for asylum, withholding of removal, and protection under the Convention Against

2

Torture ("CAT"), and ordered that Darby be removed to Jamaica. The Board of Immigration Appeals ("BIA") affirmed. Darby moved to reopen her removal proceedings a year and a half later, well past the statutory deadline to do so. But she argued that the deadline did not apply because circumstances in Jamaica had changed concerning her CAT claim. Darby also argued that the BIA should reopen proceedings because she had shown new eligibility for an adjustment of status. The BIA rejected Darby's arguments and denied her motion to reopen, so she petitions this Court to review the BIA's decision. We will deny the petition.

I

A

Darby entered the United States at an unknown time and place. In 2001, one of Darby's family members filed an I-130 Petition for Alien Relative, listing Darby as the beneficiary. The petition was approved in 2005, and Darby filed for an adjustment of status in 2009. In 2010, Darby became a lawful permanent resident of the United States.

In 2012, Darby began participating in a phone scam to defraud elderly people. The leader of the scam, Ringo, lived in Jamaica. Ringo would call elderly U.S. citizens from a disguised number and inform them that they had won a lottery and needed only to pay a tax to receive their winnings. Those who bought into the scam would send the "tax" money to Ringo through his intermediaries, one of whom was Darby's cousin, Shereen.

Shereen stayed at Darby's home in New York for several weeks and began receiving packages there. Shereen asked

3

Darby to receive a $3,000 wire transfer for her through Western Union in exchange for ten percent of the amount transferred. Darby accepted, and she continued to receive similar wire transfers until Western Union blocked her from sending or receiving money.

Darby became more involved in the scam and began traveling to Jamaica to hand-deliver money to Ringo. Eventually, Ringo sent a package of money to Darby's house that never arrived. Darby told Ringo over the phone that she never received the package, but Ringo suspected she was lying. He threatened that if Darby did not return the money, he would "blow up [her] house with bullets." A.R. 340. Darby insisted that she had not received the package and told Ringo to stop sending her money. After that conversation, Darby received no more funds from Ringo and had no further contact with him.

In 2014, Darby was arrested for her involvement in the lottery scam. She pleaded guilty to conspiracy to commit mail and wire fraud in violation of 18 U.S.C. §§ 1349, 1341, and 1343. As part of her guilty plea, Darby provided information about Ringo to the Assistant U.S. Attorney prosecuting her case. She identified Ringo in a photograph but did not receive a reduced sentence in exchange for providing the information. Darby was sentenced to thirty months in prison and ordered to pay restitution of $93,836.

B

Because of Darby's conviction, the Department of Homeland Security ("DHS") filed charges of removability against her under 8 U.S.C. § 1227(a)(2)(A)(i) and (iii). The IJ sustained the charges. At her merits hearing, Darby claimed asylum, withholding of removal, and CAT protection. The IJ

4

found Darby credible. He then ruled that Darby was statutorily barred from receiving asylum and that she had not established a claim for withholding of removal.

The IJ also denied Darby's CAT claim, which formed the sole basis of Darby's appeal. The IJ ruled that Darby had not established that she would likely suffer torture if removed to Jamaica, finding that: (1) nothing in the record indicated that Ringo or his associates were looking for Darby; (2) Darby had no contact with Ringo since he threatened her over the phone in 2013; (3) Ringo did not know Darby's whereabouts; (4) neither Ringo nor his associates acted on Ringo's threats against Darby; (5) Darby did not know whether Ringo knew of her cooperation with the U.S. Attorney's Office; and (6) Darby did not know whether Ringo or his associates ever acted on threats they made to other individuals. The IJ also found no objective evidence that Darby could not relocate to an area in Jamaica where Ringo could not find her. Finally, the IJ found that even if Darby had established a likelihood that she would suffer torture in Jamaica, she had not produced sufficient evidence that Jamaican government officials would target her or be willfully blind to any possible torture. Darby submitted evidence suggesting that some Jamaican police officers have been involved in the lottery scam, but the IJ found that, while there may be rogue police officers, Jamaican officials oppose and combat organized crime. The IJ thus denied Darby's applications for asylum, withholding of removal, and CAT protection.

Darby appealed her CAT claim to the BIA, which affirmed the IJ's decision. The BIA held that the IJ did not clearly err in finding that Darby had not established that she would more likely than not experience torture if removed. Darby had presented "insufficient evidence to demonstrate that each step of the hypothetical chain of events, with respect to

5

[her possible torture], is more likely than not to occur in this case." A.R. 171–72. The BIA also affirmed the IJ's determination that Darby had failed to establish that Jamaican officials would likely acquiesce to her torture. Darby's evidence that Jamaican police officers were involved in similar scams was insufficient to establish acquiescence, "particularly . . . in light of the [IJ]'s finding that there was also evidence in the record establishing that the Jamaica government actively opposes and combats organized crime and government corruption." A.R. 172.

C

A year and half after the BIA issued its decision, Darby moved to reopen removal proceedings with the BIA. Darby claimed two bases for her motion: (1) "a substantial change of circumstances" regarding her CAT claim; and (2) her "new-found eligibility for Adjustment of Status . . . based upon an approved I-130 Petition filed by her United States Citizen son." A.R. 22. In support of the first basis, Darby submitted evidence suggesting that Ringo had been extradited to the United States and had pleaded guilty to charges related to the lottery scheme. She claimed in her affidavit that Ringo had completed his sentence and returned to Jamaica,[1] and that he is aware of Darby's cooperation against him. Darby also submitted a news article reporting the death of a woman in Jamaica who Darby claims was murdered "due to conflict with Ringo concerning the lottery scheme." A.R. 26.

---

[1] Darby backpedals on this claim in her brief to this Court, admitting that publicly available information suggests that Ringo is still serving his sentence in federal prison. *See* Pet'r Br. 16 n.3.

In support of the second basis for reopening, Darby submitted documents showing that she is now eligible for an adjustment of status. After the BIA dismissed Darby's appeal, Darby's son filed an I-130 Petition for Alien Relative on behalf of Darby. The petition was approved, meaning that Darby can now petition the agency for an adjustment of status. Darby has prepared the documents necessary to file the petition, including a waiver under 8 U.S.C. § 1182(h) for her criminal conviction. Darby believes "there is an overwhelming likelihood that this waiver and [her] Adjustment of Status application will be approved . . . due to [the] extreme hardship" that would be "suffered by [her] family members" if she were to be removed to Jamaica. A.R. 35.

The BIA denied Darby's motion to reopen. The BIA began by noting that Darby filed her motion to reopen more than ninety days after the BIA dismissed her appeal, well after the statutory deadline. It then held that Darby had not established that an exception to the ninety-day filing deadline applies, or that an exceptional situation warranting sua sponte reopening exists. In response to Darby's claims that Ringo is now in Jamaica and is aware of her cooperation against him, the BIA held that "[t]he evidence presented with the motion does not establish a material change in country conditions or circumstances in Jamaica to warrant granting the untimely motion." A.R. 3. The BIA emphasized that the motion to reopen contained no evidence warranting reconsideration of its conclusion that Darby had failed to establish that Jamaican officials would acquiesce to any act of torture against her. The motion also lacked evidence that Ringo was involved in the killing reported in the news article, that Ringo is aware of Darby's assistance in his prosecution, or that Ringo has threatened Darby. Finally, the BIA declined to reopen Darby's case

7

sua sponte, reasoning that "[b]ecoming potentially eligible for relief after a final administrative decision has been entered is not a rare or exceptional circumstance and does not, in itself, constitute an exceptional situation warranting consideration of an untimely motion to reopen." A.R. 4.

Darby timely petitioned this Court for review of the BIA's denial of her motion to reopen.

II

The BIA had jurisdiction under 8 C.F.R. § 1003.2 (2021) to consider Darby's motion to reopen removal proceedings. We lack jurisdiction to review the BIA's decision declining to reopen Darby's proceedings sua sponte, as discussed *infra* Section IV. *See Sang Goo Park v. Att'y Gen.*, 846 F.3d 645, 651 (3d Cir. 2017). We have jurisdiction over the remaining issues in Darby's petition under 8 U.S.C. § 1252(a). *See Cruz v. Att'y Gen.*, 452 F.3d 240, 246 (3d Cir. 2006).

Motions to reopen are especially disfavored in deportation proceedings. *INS v. Doherty*, 502 U.S. 314, 323 (1992). "As a general rule, motions to reopen are granted only under compelling circumstances." *Guo v. Ashcroft*, 386 F.3d 556, 561 (3d Cir. 2004). We thus review the BIA's denial of a motion to reopen for abuse of discretion and will not disturb the BIA's determination unless it is arbitrary, irrational, or contrary to law. *Borges v. Gonzales*, 402 F.3d 398, 404 (3d Cir. 2005). We review the BIA's legal conclusions de novo and its factual findings under the substantial-evidence standard. *Id.*

III

A

Article 3 of the CAT prevents the United States from deporting an alien to a country "where there are substantial grounds for believing that he would be in danger of being subjected to torture." United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85. An applicant for relief on the merits under the CAT bears the burden of proof "to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2); *see Sevoian v. Ashcroft*, 290 F.3d 166, 174–75 (3d Cir. 2002). For an act to constitute torture under the CAT, it must be:

> (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for an illicit or proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions.

*Auguste v. Ridge*, 395 F.3d 123, 151 (3d Cir. 2005).

If the agency rules against the applicant, she may still obtain relief by moving to reopen removal proceedings with the agency. The motion must "state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." 8 U.S.C. § 1229a(c)(7)(B). The BIA has jurisdiction over motions to reopen, and "[t]he decision to grant or deny a

motion to reopen or reconsider is within the discretion of the [BIA]." 8 C.F.R. § 1003.2(a). The BIA may deny a motion to reopen "even if the party moving has made out a prima facie case for relief." *Id.*

In moving to reopen, an applicant faces both procedural and substantive hurdles. To clear the procedural hurdle, an applicant must file a motion to reopen "no later than 90 days after the date on which the final administrative decision was rendered," subject to limited exceptions. 8 C.F.R. § 1003.2(c)(2); *see Bamaca-Cifuentes v. Att'y Gen.*, 870 F.3d 108, 110–11 (3d Cir. 2017). One exception to the ninety-day deadline is if the motion to reopen is "based on changed circumstances arising in the country of nationality . . . if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(ii). That is, an otherwise untimely motion to reopen is considered timely if it is (1) an application for asylum or withholding of removal; (2) based on changed country circumstances; and (3) supported by material evidence unavailable at the previous hearing. *Bamaca-Cifuentes*, 870 F.3d at 111.

Important here is that an applicant must show that the evidence she submits is material to her application. *See Khan v. Att'y Gen.*, 691 F.3d 488, 496 (3d Cir. 2012). The requirement to present material evidence is a "heavy burden." *Id.* at 497. "To meet the materiality requirement, the petitioner[] must allege facts that 'would be sufficient, if proved, to change the result' of [her] application."[2] *Id.* at 496 (internal quotation

---

[2] Darby argues that the exception for changed country *conditions* under the Immigration and Nationality Act ("INA") is

marks omitted) (quoting *Kaur v. BIA*, 413 F.3d 232, 234 (2d Cir. 2005)). As applied in *Khan*, the materiality standard requires evidence rebutting the IJ's finding "that provided the basis" for denying relief. *See id.* at 497 (internal quotation marks omitted) (quoting *Kaur*, 413 F.3d at 234).

If the applicant overcomes the procedural hurdle, she then faces a substantive hurdle. To clear the substantive hurdle, an applicant must establish prima facie eligibility for relief. *Shardar v. Att'y Gen.*, 503 F.3d 308, 313 (3d Cir. 2007). To make a prima facie case, the applicant must "produce objective evidence showing a 'reasonable likelihood' that he can estab-

---

narrower than the exception for changed country *circumstances* under the regulations. We doubt this is correct, but we need not address the issue today. This case concerns the requirement that the alien present "material" evidence on a motion to reopen, which appears in both the INA and the regulations. *See* 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii). We have held that the changed-country-circumstances exception of the regulations—and the applicable procedural requirements—apply to motions to reopen CAT claims. *See Bamaca-Cifuentes v. Att'y Gen.*, 870 F.3d 108, 110–11 (3d Cir. 2017). Because the language in the regulations "echoes the language of the INA," *id.* at 111 n.10, we have often treated as interchangeable the procedural requirements of the INA and regulations on motions to reopen, *see, e.g.*, *Liem v. Att'y Gen.*, 921 F.3d 388, 395 (3d Cir. 2019); *Pllumi v. Att'y Gen.*, 642 F.3d 155, 161 (3d Cir. 2011). Our precedents interpreting the materiality requirement of the INA thus apply with equal force to this case. *E.g.*, *Khan v. Att'y Gen.*, 691 F.3d 488, 496–97 (3d Cir. 2012).

lish [that he is entitled to relief].” *Guo*, 386 F.3d at 563 (internal quotation marks omitted) (alteration in original) (quoting *Sevoian*, 290 F.3d at 175). So, in the context of a CAT claim, “the prima facie case standard for a motion to reopen under the [CAT] requires the applicant to produce objective evidence showing a ‘reasonable likelihood’ that he can establish that he is more likely than not to be tortured.” *Sevoian*, 290 F.3d at 175 (citation omitted) (quoting *In re S-V-*, 22 I. & N. Dec. 1306, 1308 (BIA 2000) (en banc)). We have recognized that “no hard and fast rule can be laid down as to what constitutes a sufficient showing of a prima facie case for reopening,” because “[m]uch depends on the nature of the case and the force of the evidence already appearing in the record sought to be reopened.” *Id.* at 173 (internal quotation marks omitted) (quoting *Matter of Sipus*, 14 I. & N. Dec. 229, 231 (BIA 1972)). The decision involves both factual and legal determinations and often requires the BIA to weigh the sufficiency of the evidence. *See id.* at 174–75.

We pause here to note the potential for confusion between the materiality standard of the procedural hurdle and the prima facie standard of the substantive hurdle. The materiality standard requires that the applicant show “facts that ‘would be sufficient, if proved, to change the result’ of [her] application.” *Khan*, 691 F.3d at 496 (internal quotation marks omitted) (quoting *Kaur*, 413 F.3d at 234). That might sound like a prima facie standard, but the two concepts are distinct. *See Doherty*, 502 U.S. at 323 (“[T]here [are] ‘at least’ three independent grounds on which the BIA might deny a motion to reopen—failure to establish a prima facie case for the relief sought, failure to introduce previously unavailable, material evidence, and a determination that even if these requirements

12

were satisfied, the movant would not be entitled to the discretionary grant of relief which he sought." (quoting *INS v. Abudu*, 485 U.S. 94, 104 (1988)).

In *Khan*, we distinguished between the materiality and prima facie standards. After laying out the materiality standard, we said that "[e]ven if an alien can demonstrate changed country conditions, a motion to reopen will not be granted unless the petitioner establishes prima facie eligibility for relief." *Khan*, 691 F.3d at 496. That is, even if an applicant clears the procedural hurdle through the changed-country-conditions exception, she still must overcome the substantive hurdle. *See Shardar*, 503 F.3d at 313. In *Khan*, the petitioner, and a minor whom he had listed as a derivative beneficiary, claimed asylum, withholding of removal, and CAT protection. *Khan*, 691 F.3d at 491. They claimed persecution in Pakistan based on the petitioner's membership in the Pakistan People's Party. *Id.* The IJ denied the applications in part because he found that the petitioners had presented no credible evidence that they belonged to the Pakistan People's Party. *Id.* at 491, 497. The BIA affirmed. *Id.* at 492. The petitioners moved to reopen based on changed country conditions, presenting new evidence of, among other things, increased violence in Pakistan. *Id.* at 492, 495. The BIA held that the petitioners' new evidence was not material to their application "because the petitioners had not addressed the IJ's finding . . . that there was no credible evidence that the petitioners belonged to the [Pakistan People's Party]." *Id.* at 497. We agreed with the BIA: "[w]ithout credible evidence that the petitioners belonged to the [Pakistan People's Party], the petitioners cannot prevail on an asylum claim based on membership in that group." *Id.* In other words, the petitioners' new evidence of increased violence—no matter how substantial—would not have "'change[d] the result' of

their application" because the evidence did not rebut the IJ's holding that they did not belong to the targeted group. *Id.* at 496 (internal quotation marks omitted) (quoting *Kaur*, 413 F.3d at 234).

Our interpretation of the materiality standard in *Khan* reflects other circuits' interpretations. Notably, it tracks the Second Circuit's decision in *Kaur*, from which we derived our definition of materiality. *See Khan*, 691 F.3d at 496. In *Kaur*, the court agreed with the BIA that the petitioner's new evidence "was not 'material' because it did not rebut the adverse credibility finding that provided the basis for the IJ's denial of petitioner's underlying asylum application." *Kaur*, 413 F.3d at 234. Other circuits employing the change-the-result-of-the-application standard of materiality have interpreted it similarly. *See Perez v. Holder*, 740 F.3d 57, 62 (1st Cir. 2014) ("[N]ew evidence [that] did not even purport to fill" what was "a key gap in [the] original application" was not material.); *Lopez-Garcia v. Barr*, 969 F.3d 749, 752–53 (7th Cir. 2020) (New evidence was not material when it "only contributed to the evidence that [the petitioners' country] continues to have widespread violence and crime, but it did not address the deficiencies of their claims."); *Baker White v. Wilkinson*, 990 F.3d 600, 606 (8th Cir. 2021) (New evidence that criminal charges against the petitioner had been dismissed was not material "[b]ecause the arrests and charges did not form the gravamen of the IJ's decision."). Materiality thus requires, at a minimum, that an applicant's evidence in a motion to reopen address the deficiencies of the initial application. New evidence that does not address the factual basis for the IJ's denial of relief would not change the result of the application and is therefore not material. *See Khan*, 691 F.3d at 496–97.

14

With these principles in mind, the daylight between the materiality standard and prima facie standard becomes clear. Materiality requires that applicant's evidence address the *deficiencies* of her application, while the prima facie standard requires that the evidence be *sufficient* to show a reasonable likelihood that the statutory requirements have been met. *See id.* at 497; *Sevoian*, 290 F.3d at 174–75. When an IJ denies relief upon finding that an applicant has failed to meet a particular element of the claim, the applicant moving to reopen must present evidence directly addressing the element the IJ found deficient. *See Khan*, 691 F.3d at 497. The applicant's evidence, taken as a whole, is not material if it merely strengthens the other elements of her claim without addressing the element the IJ found deficient. *Id.* But if the applicant presents new evidence that addresses the IJ's findings and was previously unavailable, she clears the procedural hurdle. *See id.* at 496; *Shardar*, 503 F.3d at 313. Then, if the new, material evidence of changed country conditions can show "a reasonable likelihood that the statutory requirements [for relief] have been satisfied," she clears the substantive hurdle. *Sevoian*, 290 F.3d at 173 (alteration in original) (internal quotation marks omitted) (quoting *In re S-V-*, 22 I. & N. Dec. at 1308).

Returning to the regulations, even if an applicant makes it past both the procedural and substantive hurdles, the BIA still has discretion to deny the motion to reopen. *See* 8 C.F.R. § 1003.2(a). The regulations provide that the BIA may deny a motion to reopen "even if the party moving has made out a prima facie case for relief." *Id.*; *see also Doherty*, 502 U.S. at 323.

B

We turn now to the facts of this case. The BIA dismissed Darby's appeal on the merits because Darby had failed to establish that (1) she would likely suffer harm by Ringo, (2) she could not relocate in Jamaica to somewhere safe, and (3) Jamaican officials would acquiesce to her harm. Darby moved to reopen well after the ninety-day deadline, so she based her motion on the exception for changed country circumstances. *See* 8 C.F.R. § 1003.2(c)(3)(ii). First facing the procedural hurdle, Darby had to present new, material evidence of changed country circumstances. *See Bamaca-Cifuentes*, 870 F.3d at 111. And to meet the materiality requirement, Darby's evidence had to directly address the agency's reasons that provided the basis for denying her relief. *See Khan*, 691 F.3d at 497. Darby's motion was thus required to contain new evidence addressing the agency's core findings that she had not established (1) a likelihood of harm; (2) an inability to relocate; and (3) official acquiescence. A motion lacking evidence addressing any one of these core reasons for denying her claim would not change the result of her application and would thus fail the materiality requirement. *See Khan*, 691 F.3d at 497.

The BIA denied Darby's motion to reopen in part because it contained no evidence "to warrant reconsideration of [the] conclusion" that Darby had failed to establish official acquiescence. A.R. 3. That was not an abuse of discretion. Darby's motion did not even claim to introduce new evidence of official acquiescence. Instead, her motion emphasized her prior evidence that Jamaican police participate in lottery schemes, and it merely reasserted that Jamaican officials "would turn a blind eye towards any persecution against [her]." A.R. 27. Darby admitted that not all members of law enforcement would turn a blind eye but argued that her previously

16

introduced evidence of law-enforcement involvement in lottery schemes was sufficient to establish official acquiescence under the CAT. *See* A.R. 27 (citing *De La Rosa v. Holder*, 598 F.3d 103 (2d Cir. 2010)). The BIA already rejected that argument, and Darby's reassertion of it does not constitute new, material evidence of changed country conditions.

In her brief to this Court, Darby contends that she did include new evidence of official acquiescence in her motion to reopen. Darby's only proffered evidence on this point is the news article reporting a murder in Jamaica. Darby claimed in her affidavit that the murder victim was killed "due to conflict with Ringo concerning the lottery scheme." A.R. 34. She argues that the article shows acquiescence because it "indicates that Jamaican authorities have not impeded [Ringo's] ability to visit acts of violence upon people in Jamaica." Pet'r Br. 34. Even if Darby is right that Ringo was behind the murder, the article does not suggest that Jamaican officials acquiesced to the murder. Indeed, the article quotes a Jamaican official who emphasized "the important responsibility of all social agents" to "restore value for the sanctity of life." A.R. 63. Even further removed is the implication that Jamaican officials would acquiesce to an act of torture against Darby. The BIA thus did not abuse its discretion in holding that Darby "has not presented evidence with her motion to warrant reconsideration of [its earlier] conclusion" that she "did not establish that Jamaican authorities would acquiesce or turn a blind eye to any act of torture against her." A.R. 3. The BIA properly dismissed Darby's motion as untimely because "[t]he evidence presented with the motion does not establish a material change in country conditions or circumstances in Jamaica." A.R. 3.

Darby's motion included evidence addressing the agency's other findings, but that evidence cannot rehabilitate

17

her motion. In other words, such evidence would not "change the result" of her application. *Khan*, 691 F.3d at 496 (internal quotation marks omitted) (quoting *Kaur*, 413 F.3d at 234). No matter how convincingly Darby rebuts the agency's finding on the likelihood of harm or possibility of relocation, her claim is bound to fail without evidence addressing the agency's official-acquiescence finding. *See Khan*, 691 F.3d at 496–97. We thus hold that Darby's failure to present evidence addressing the agency's finding that she had not established Jamaican officials would acquiesce to an act of torture against her was a failure to meet the materiality requirement of her motion to reopen.

We emphasize that Darby's motion to reopen fails not because it contained *unconvincing* evidence of official acquiescence, but because it contained *no* such evidence. Darby fails the materiality requirement—and falls short of the procedural hurdle—because she presented no evidence addressing a core deficiency of her application. *See id.* at 496–97. Had she produced such evidence, the BIA could then move to the substantive hurdle and evaluate whether the evidence established a reasonable likelihood that she can establish that she is entitled to relief. *See Guo*, 386 F.3d at 563. Because Darby presented no evidence of official acquiescence, the BIA did not abuse its discretion in dismissing her motion to reopen as untimely.

IV

Notwithstanding Darby's untimely motion, the BIA retains discretion to reopen proceedings sua sponte.[3] *See* 8

---

[3] We often note that "sua sponte" reopening is a misnomer. *See, e.g.*, *Sang Goo Park v. Att'y Gen.*, 846 F.3d 645, 650 n.15 (3d Cir. 2017). Aside from reopening to correct ministerial errors,

C.F.R. § 1003.2(a). The BIA has "unfettered discretion" to grant or deny a motion to reopen sua sponte. *Pllumi v. Att'y Gen.*, 642 F.3d 155, 159 (3d Cir. 2011). Because "orders by the BIA declining to exercise its discretion to reopen sua sponte are functionally unreviewable," we generally lack jurisdiction to review the BIA's decision on sua sponte reopening. *Sang Goo Park*, 846 F.3d at 651. There are two exceptions: First, we may review the BIA's decision on a motion to reopen sua sponte when "the BIA relies on an incorrect legal premise." *Id.* Second, we may review such a decision when the BIA has constrained itself through "settled practice to the point where an irrational departure from that practice might constitute abuse." *Id.* at 651–52.

Darby claimed that her new eligibility for adjustment of status constitutes an extraordinary circumstance warranting sua sponte reopening. The BIA's treatment of Darby's sua sponte motion was succinct. In full, the BIA held:

> The respondent's potential eligibility for adjustment of status in connection with a visa petition her son filed on her behalf did not occur until well after our decision. Becoming potentially eligible for relief after a final administrative decision has been entered is not a rare or

---

typographical mistakes, or defects in service, the BIA "may only reopen or reconsider any case in which it has rendered a decision solely pursuant to a motion filed by one or both parties." 8 C.F.R. § 1003.2(a). A motion to reopen proceedings sua sponte is really a request that the BIA waive the procedural requirements of a motion to reopen and exercise its discretionary authority to reopen removal proceedings. *Salazar-Marroquin v. Barr*, 969 F.3d 814, 816 n.1 (7th Cir. 2020).

19

exceptional circumstance and does not, in itself, constitute an exceptional situation warranting consideration of an untimely motion to reopen.

A.R. 4.

Darby argues that we have jurisdiction to review the BIA's refusal to reopen because the BIA committed legal error by misconstruing her eligibility for adjustment of status. The DHS had approved the I-130 petition filed by her son, meaning Darby could apply to become a lawful permanent resident. She argues that approval of her I-130 petition means she is "*actually* eligible" for status adjustment, not potentially eligible. Pet'r Br. 41. The BIA's misstatement was a legal error, Darby says, because our Court has distinguished the legal status of one who is eligible for adjustment of status from one who is potentially eligible for adjustment of status. *See Hashmi v. Att'y Gen.*, 531 F.3d 256, 260 (3d Cir. 2008).

Darby's argument misapprehends the BIA's holding. The BIA's reason for denying sua sponte reopening was that Darby's circumstances are not "rare or exceptional." A.R. 4. That is true regardless of whether Darby's I-130 petition was approved or pending. A pending I-130 petition may be grounds for a continuance, *Matter of Hashmi*, 24 I. & N. Dec. 785, 791, 794 (BIA 2009), but the BIA regularly holds that approval of an I-130 petition is not an exceptional circumstance justifying sua sponte reopening, *see, e.g.*, *Nkomo v. Att'y Gen.*, 986 F.3d 268, 271 (3d Cir. 2021); *Vithlani v. Att'y Gen.*, 823 F. App'x 104, 105–06 (3d Cir. 2020) (unpublished opinion). The BIA's holding that Darby's circumstances are not "rare or exceptional" did not rest on a legal determination of her status. A.R. 4. Where there is no legal determination, there is no legal error.

We requested that counsel address at oral argument the persuasiveness of *Hoque v. Attorney General*, 574 F. App'x 133 (3d Cir. 2014) (unpublished opinion). This case is essentially the same as *Hoque*: The BIA's denial of reopening did not rest on a legal determination about the petitioner's eligibility for an adjustment of status. *See Hoque*, 574 F. App'x at 135. As in *Hoque*, "the BIA did not rely on a legal premise or articulate some meaningful standard; rather, we read its opinion as simply exercising its unfettered discretion." *Id.* We thus lack jurisdiction to review the BIA's refusal to reopen sua sponte. *See Sang Goo Park*, 846 F.3d at 651.

V

Darby next attempts to invoke our jurisdiction by arguing that the BIA denied her due process by ignoring evidence of "'insurmountable' harms" that will befall her family if she is removed to Jamaica. Pet'r Br. 43. Darby claimed in her motion to reopen that her mother depends on her for medical care and that her children are "suffering immensely" without her. A.R. 28. She argued that these facts, along with the approval of her I-130 petition, justified reopening. In her brief to this Court, Darby argues that the BIA violated her right to due process by not addressing the evidence she introduced in her motion to reopen about harm to her family. That argument fails, too.

We retain jurisdiction to review constitutional claims such as a denial of due process. *See* 8 U.S.C. § 1252(a)(2)(D); *Hernandez v. Gonzales*, 437 F.3d 341, 344–46 (3d Cir. 2006). To raise a colorable due-process claim, an alien must first state a liberty or property interest. *Hernandez*, 437 F.3d at 345–46. But aliens do not have a liberty or property interest in discretionary relief. *Id.* at 346. The BIA's decision to grant or deny a

21

motion to reopen is discretionary: the BIA may deny a motion to reopen "even if the party moving has made out a prima facie case for relief." 8 C.F.R. § 1003.2(a). As many of our sister circuits have recognized, an alien lacks a constitutionally protected interest in reopening. *E.g.*, *Reyes v. Sessions*, 886 F.3d 184, 188 (1st Cir. 2018); *Dekoladenu v. Gonzales*, 459 F.3d 500, 508 (4th Cir. 2006); *Altamirano-Lopez v. Gonzales*, 435 F.3d 547, 550–51 (5th Cir. 2006); *Ashki v. INS*, 233 F.3d 913, 920–21 (6th Cir. 2000); *Iglesias v. Mukasey*, 540 F.3d 528, 531 (7th Cir. 2008); *Baker White v. Wilkinson*, 990 F.3d 600, 604–05 (8th Cir. 2021); *Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1293 (10th Cir. 2001); *Bing Quan Lin v. Att'y Gen.*, 881 F.3d 860, 868–69 (11th Cir. 2018).

Darby argues that her liberty interest is not in obtaining discretionary relief, but in having the BIA consider the evidence she presented in her motion.[4] But in *United States v.*

---

[4] Darby also suggests that when the BIA ignores evidence it commits a legal error distinct from a due-process violation. *See* Pet'r Br. 44–45 (citing *Arej v. Sessions*, 852 F.3d 665, 667 (7th Cir. 2017)); Reply Br. 23–25. We doubt whether we have jurisdiction to consider such a challenge. For one, a failure to consider evidence does not fit in either of the two categories of error that we have jurisdiction to consider. *See Sang Goo Park v. Att'y Gen.*, 846 F.3d 645, 651–52 (3d Cir. 2017). And in *Hoque v. Attorney General*, 574 F. App'x 133 (3d Cir. 2014) (unpublished opinion), which Darby relies on, we said that "we retain jurisdiction over [the petitioner's] argument that the BIA failed to consider the entire record—*at least to the extent that this argument presents a due process challenge*." *Id.* at 135 (emphasis added). At any rate, this argument falls along with

*Torres*, 383 F.3d 92 (3d Cir. 2004), we held that an alien had no due-process interest in even being *considered* for relief when the statute lacked "'explicit mandatory language' that could create in an alien any protectible expectation of entitlement to relief." *Id.* at 105 (quoting *Frey v. Fulcomer*, 132 F.3d 916, 925 n.7 (3d Cir. 1997)). A motion to reopen likewise creates no "protectible expectation of entitlement to relief." *Id.* Much less does a motion to reopen sua sponte, which is essentially a request that the BIA waive its procedural requirements and exercise its discretionary authority to reopen removal proceedings. *See Salazar-Marroquin v. Barr*, 969 F.3d 814, 816 n.1 (7th Cir. 2020). In any event, we are confident the BIA reviewed the evidence Darby presented. The BIA acknowledged Darby's visa petition and, by extension, the evidence accompanying that petition. The BIA's determination "is entitled to a presumption of regularity," and we are convinced it "made an individualized determination of [Darby]'s interests." *Abdulai v. Ashcroft*, 239 F.3d 542, 550 (3d Cir. 2001) (internal quotation marks omitted) (quoting *McLeod v. INS*, 802 F.2d 89, 95 n.8 (3d Cir. 1986)).

*    *    *

We will deny the petition for review.[5]

---

Darby's due-process claim because the BIA adequately considered the evidence in the motion.

[5] We commend counsel on both sides for their excellent advocacy and responsiveness to the Court.

RESTREPO, *Circuit Judge*, dissenting in part and dissenting in the judgment:

While I agree with my colleagues' treatment of Petitioner's CAT claim in Section III of the opinion, I must respectfully dissent from Section IV regarding Petitioner's motion to reopen sua sponte.

It is worth repeating at the outset that, although the BIA generally enjoys "unfettered discretion" in granting or denying a motion to reopen sua sponte, if it relies on an "incorrect legal premise" in rejecting such a motion we may remand the case to the BIA for proper reconsideration against the correct legal background. *Pllumi v. Att'y Gen.*, 642 F.3d 155, 160 (3d Cir. 2011). In my view, this describes precisely the circumstance before us here. In denying Petitioner's motion to reopen, the BIA characterized Petitioner as only being "potentially eligible" for relief, which was error. A.R. 4. Petitioner was *actually* eligible for relief.

We have recognized the legal force of such a distinction in our prior holding in *Hashmi v. Att'y Gen.*, 531 F.3d 256 (3d Cir. 2008). In *Hashmi*, the Immigration Judge denied the petitioner's request for a continuance of his removal proceedings while he was awaiting the adjudication of his I-130 petition. In reversing the Immigration Judge and BIA, we agreed with the petitioner that he was "not *potentially* eligible to apply for a status adjustment. It appears that he is eligible. He has already filed his I-130 petition, and is in the process of having the petition adjudicated." *Id*. at 260 (emphasis in original).

Further, we distinguished the circumstances in *Hashmi* to those faced by the petitioner in *Khan v. Att'y Gen.*, 448 F.3d

226 (3d Cir. 2006), who had been awaiting the approval of his wife's Labor Certification application pursuant to 8 U.S.C. § 1255(i). If the application were successful, the petitioner's wife would have become a legal permanent resident and the petitioner would have subsequently become eligible to apply for adjustment of status. *Id*. at 229. But because the Certification application was only pending, the petitioner in *Khan* was unable to demonstrate he had *prima facie* eligibility to apply for adjustment of status, and we approved the Immigration Judge's denial of a continuance of his removal proceedings. *Id.* at 234-35.

The circumstances here are closer to *Hashmi* than *Khan*. Indeed, Petitioner here is further along in some respects than the petitioner in *Hashmi*, as she already has had a I-130 application filed and approved on her behalf by her adult son. And unlike the petitioner in *Khan*, she does not have to wait for some unspecified, indefinite period of time before knowing whether she will be eligible to apply for adjustment of status. If the BIA had granted her motion, she would have been immediately eligible to apply for adjustment of status through a Section 212(h) hardship waiver.

This view of her actual eligibility is reinforced by the text of the USCIS Policy Manual, which details the eligibility requirements for adjustment of status. As the Manual explains:

> An adjustment applicant must be eligible to receive an immigrant visa. An applicant typically *establishes eligibility for an immigrant visa* through an immigrant petition in one of the categories listed in the table below.

USCIS Policy Manual, Vol. 7, Part B, Ch. 2 (emphasis added). The family-based Form I-130 Petition, the one approved for Petitioner, is the very first petition listed in the table referenced in the Manual. The legal effect of the approved I-130 Petition was to establish Petitioner as eligible to adjust her status. The BIA relied on an incorrect legal premise in determining reopening was not warranted by characterizing her eligibility as merely "potential."

For these reasons I would have vacated the BIA's judgment and remanded the case for reconsideration.

3