**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2164
_____

CARLOS CALDERON-ESCOBAR,
Petitioner
v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of an
Order of the Board of Immigration Appeals
(Agency No. A209-308-021)
Immigration Judge: Kuyomars Q. Golparvar
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 12, 2024

Before: CHAGARES, *Chief Judge*, ROTH, and RENDELL, *Circuit Judges*.

(Filed: January 10, 2025)
_____

OPINION[1]
_____

RENDELL, *Circuit Judge*.

---

[1] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Carlos Calderon-Escobar petitions for review of a Board of Immigration Appeals (BIA) order dismissing his appeal of the denial of his application for cancellation of removal and denying his motion to remand for consideration of new evidence. We will grant his petition, reverse the BIA's order to the extent that it denied the motion to remand, and remand for further proceedings consistent with this opinion.

I

Calderon-Escobar is a native and citizen of Mexico. **A6.** He entered the United States without authorization or inspection in March 2001. He and his wife, Caren, a native and citizen of Guatemala, have two school-age children. **A6.** The family lives in Pennsylvania where they own a home and a car. Calderon-Escobar established, owns, and operates a successful tree removal business, which employees five people. **A6-7.** He has filed state and federal income tax returns and has paid additional taxes as required. **A10.** He has maintained his continuous physical presence in the United States for over 20 years. **A12.**

In 2016, the Department of Homeland Security charged Calderon-Escobar as subject to removal under 8 U.S.C. § 1182(a)(6)(A)(i). **A5.** He conceded his removability but applied for cancellation of removal under 8 U.S.C. § 1229b(b)(1)(D), claiming that his removal would result in "exceptional and extremely unusual hardship" to his two U.S. citizen children. 8 U.S.C. § 1129b(b)(1)(D). In 2021, after a hearing, an immigration judge (IJ) denied the application for cancellation of removal and ordered him removed.

The IJ concluded that although Calderon-Escobar was physically present for a continuous period of more than twenty years, that he was of good moral character, and

2

had not been convicted of any disqualifying offenses, he failed to establish that his two U.S. citizen children would suffer exceptional and extremely unusual hardship because of his removal.[2] **A13-15.** The IJ reasoned that Calderon-Escobar's success in establishing a tree removal company and the assets he accumulated in doing so would provide his children with a comfortable life, and that the children's ages, health, and ability to speak Spanish would allow them to acclimate to life in Mexico with some ease. **A16-19.**

Calderon-Escobar appealed. **A39.** While his appeal was pending, however, his wife and two-year old son were robbed at gunpoint outside a grocery store. **A42.** As a result of this assault, his wife and son were transported to the hospital. **A42.** Shortly after this incident, Calderon-Escobar's son experienced marked behavioral changes including "twitching or nervous movement[s]," "shakes," "nightmares," and trouble eating and sleeping. A42-43. Calderon-Escobar and his wife took their son to see a family physician who preliminarily diagnosed him with an "anxiety/behavioral change," and prescribed some medication. AR61. After another doctor's visit, he was further diagnosed with "Anxiety/Panic Episodes." AR54. The doctor noted that Calderon-Escobar's son was exhibiting symptoms of Post-Traumatic Stress Disorder and referred him to the Children's Hospital of Philadelphia's (CHOP) "Psychiatry and Behavioral Clinic" for evaluation and treatment. A52.

---

[2] To be eligible for cancellation of removal under the Immigration and Naturalization Act, the applicant must: (1) have been physically present in the United States for a continuous period of at least ten years, (2) be of good moral character during that time, (3) have not been convicted of certain criminal offenses, and (4) demonstrate that removal would result in "exceptional and extremely unusual hardship to [a qualifying relative]." 8 U.S.C. § 1229b(b)(1).

Based on his two-year old son's changed circumstances and diagnoses of anxiety, behavioral change, and panic episodes, as well as likely, though not yet diagnosed, PTSD, Calderon-Escobar a filed a motion to remand for consideration of new evidence. **A37.** In his motion, he urged that his son had been diagnosed with a serious medical condition and that adequate medical care was unavailable in Mexico. **A45-46.** To support that his son was suffering from a serious medical condition, he submitted his son's doctor's notes and prescription, affidavits providing testimony about the effect that the robbery and assault had on his son, and the police report of the incident. He further cited to various medical journal articles relating to the behavioral and emotional effects of violence on minors. **A44-45.** To support that medical care would not be adequate in Mexico to treat his son's condition, he submitted a 2010 article titled "Child and Adolescent Mental Health Services in Mexico" which detailed the lack of mental health treatments for children in Mexico. A69-71.

Despite this new evidence of changed circumstances, the BIA denied the motion to remand and dismissed the appeal in a two-page order. **A1-2.** As to the motion to remand, the BIA concluded that he had not established prima facie eligibility for the requested relief, stating that he "has not provided evidence that a serious medical condition has been diagnosed or that treatment would be unavailable in Mexico." AR4. In reaching this conclusion, the BIA did not discuss any of the doctor's notes, affidavits, the police report, or reference any of Calderon-Escobar's citations to medical journal articles relating to the psychological effects of violence on young children. **A2.** The BIA also did not explain why the scholarly report he submitted to show that Mexico's mental

4

health services were not equipped to handle his son's serious medical condition was insufficient to establish prima facie entitlement to relief. **A2.**

Regarding Calderon-Escobar's appeal on the merits, the BIA recounted the findings of the IJ, and agreed that he did not present sufficient evidence that the "conditions in Mexico would cause exceptional and extremely unusual hardship to his children" and that he would be able to create a good life for his family in Mexico. AR4.

Calderon-Escobar petitioned for review.

## II.[3]

Before this Court, Calderon-Escobar urges that (1) the BIA abused its discretion when it denied his motion to remand without providing a rational explanation for rejecting the evidence he presented concerning his son's serious medical condition and the inadequacy of Mexico's mental health system to treat the serious medical condition; and (2) the BIA and IJ failed to consider arguments and evidence regarding the "double level of separation" that the qualifying relative's would experience.[4] We agree that the BIA abused its discretion.

---

[3] We have jurisdiction under 8 U.S.C. § 1252(a)(2)(D). *Wilkinson v. Garland*, 601 U.S. 209, 212 (2024) (holding that a question over the "exceptional and extremely unusual hardship" determination is a "quintessential mixed question of law and fact.").

The Court reviews a BIA decision to deny a motion to remand for abuse of discretion. *Darby v. Attorney Gen.*, 1 F.4th 151, 159 (3d Cir. 2021).

[4] As we conclude that the BIA erred denying Calderon-Escobar's motion to remand, we need not reach this argument regarding "double level of separation."

To succeed on a motion to remand, the movant must establish "prima facie eligibility" for relief. *Guo v. Ashcroft*, 386 F.3d 556, 563 (3d Cir. 2004). "To make a prima facie case, the applicant must 'produce objective evidence showing a "reasonable likelihood" that he can establish [that he is entitled to relief].'" *Darby v. Att'y Gen.*, 1 F.4th 151, 160–61 (3d Cir. 2021) (citation omitted) (alteration in original). "Reasonable likelihood" simply means "a realistic chance." *Guo*, 386 F.3d at 566. An applicant does not need to "establish" the existence of "extraordinary and extreme unusual hardship" but only that there is "a realistic chance that such a finding could be made <u>on remand</u>." *Id*. at 565 (emphasis added).

"Discretionary decisions of the BIA will not be disturbed unless they are found to be 'arbitrary, irrational or contrary to law.'" *Tipu v. I.N.S.*, 20 F.3d 580, 582 (3d Cir. 1994). Serious mischaracterization of evidence or the failure to consider key evidence may constitute an error of law. *See, e.g.*, *Paucar v. Garland*, 84 F.4th 71, 84 (2d Cir. 2023) (holding that BIA overlooking material evidence of mental illness put forth in a motion to remand was an error of law). While the BIA is not required to consider every piece of evidence with the utmost scrutiny, when such evidence is central to "the subtle determination" of the "exceptional and extremely unusual hardship" test, such as here, failure to consider that evidence is an error of law and an abuse of discretion. *Mendez v. Holder*, 566 F.3d 316, 323 (2d Cir. 2009).

Here, we conclude that the BIA abused its discretion by summarily concluding that Calderon-Escobar had not established "prima facie eligibility for the relief he seeks" because he did not provide evidence "that a serious medical condition ha[d] been

6

diagnosed or that treatment would be unavailable in Mexico." AR4. The BIA's conclusion that Calderon-Escobar's son had not been diagnosed with a serious medical condition was plainly contrary to the record evidence. Indeed, two doctor's notes memorialized that a physician had affirmatively diagnosed his son with "anxiety," "behavioral change," and "panic episodes." A52-54. And this doctor further noted that the son exhibited symptoms of PTSD and required specialized psychiatric evaluation and treatment at CHOP. While the BIA alluded to the evidence in a perfunctory footnote, it did not expressly address the affidavits, the police report, nor Calderon-Escobar's citations to various medical literature in his brief. *See* A2 n.2 (discounting all evidence under "Tab A" as insufficient "to establish a serious medical condition," without explanation). The BIA, thus, clearly erred in finding that he had not submitted evidence to show that his son had been diagnosed by a physician and recommended for further evaluation and treatment at one of the nation's top pediatric hospitals.

Similarly, the BIA's conclusion that Calderon-Escobar had "not provided evidence . . . that treatment would be unavailable in Mexico" for his son's anxiety, behavioral change, panic episodes, and likely PTSD, was contrary to the evidence. A2. In moving for remand, Calderon-Escobar submitted a 2010 article detailing the dearth and inadequacy of mental health care for children in Mexico. **A55-57.** But the BIA overlooked this somewhat dated medical article in concluding that no evidence demonstrated that "treatment would be unavailable in Mexico." A2. To succeed on his motion to remand based on new evidence, Calderon-Escobar was required only to show his prima facie eligibility for relief, not his actual eligibility. That is, he was required to

7

submit just enough evidence to show that he would have a "realistic chance" of establishing his entitlement to relief on remand. The evidence before the BIA regarding the pediatric mental health system in Mexico showed that the system is inadequate to treat Calderon-Escobar's condition. It was required to consider, but did not, whether that evidence was relevant and reliable despite its age. *See, e.g.*, *Matter of J-J-G-*, 27 I&N Dec. 808, 812 n.6. (BIA 2020) (noting that evidence must evaluated for "relevance and reliability"). It was, therefore, clearly erroneous for the BIA to find, in the face of documentary evidence to the contrary, that treatment would be available for Calderon-Escobar's son's ailments in Mexico.

## IV.

For these reasons, we will grant the petition for review, reverse the BIA's order to the extent that it denied the motion to remand, and remand the case to permit the IJ to reconsider Calderon-Escobar's application for cancellation of removal in light of the new evidence.