NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1992
_____

JOSE SELVIN ROMERO-ROMERO,

Petitioner

v.

ATTORNEY GENERAL
UNITED STATES OF AMERICA

_____

On Petition for Review of an
Order of the Board of Immigration Appeals
(A216-647-449)
Immigration Judge: Jack Weil

_____

Submitted under Third Circuit L.A.R. 34.1(a)
May 2, 2022

Before: GREENAWAY, JR., PORTER, and PHIPPS, *Circuit Judges*

(Opinion filed: August 23, 2022)

_____

OPINION[*]

_____

GREENAWAY, JR., *Circuit Judge*

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

## I

Petitioner Jose Selvin Romero-Romero seeks review of the Board of Immigration Appeals' ("Board" or "BIA") decision to affirm the denial of his motion to reopen. He argues that he is eligible for relief on the merits and that the underlying circumstances warranted reopening his proceedings sua sponte. Romero-Romero also argues that his due process rights were violated because he did not have counsel during his removal hearing. For the reasons set forth below, we disagree with Romero-Romero and will deny his petition for rehearing.

## II

### a. Romero-Romero's Removal Proceeding

Jose Selvin Romero-Romero is a native and citizen of Honduras. He entered the United States on or around November 9, 2013. Romero-Romero came to the attention of the Department of Homeland Security ("DHS" or "the Department") in October 2020, after being arrested for driving without a license and driving while intoxicated. Following time in state custody, Romero-Romero was transferred into the custody of DHS. At that time, the Department served him with a Notice to Appear for removal proceedings. The Notice to Appear charged Romero-Romero with removability pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) (being present in the United States without having been admitted or paroled). The Notice to Appear also included information explaining to Romero-Romero his right to counsel, what he should consider before accepting legal

2

advice, and a list of free or low-cost legal services available to him. Romero-Romero signed each of these documents.[1]

Romero-Romero appeared before the Immigration Judge on October 28, 2020. At the hearing, he appeared pro se but the Immigration Judge explained to him his right to counsel and provided Romero-Romero with a list of free or low-cost legal services in the area. As is common, the court also employed the services of an official interpreter to provide these explanations in Romero-Romero's native language of Spanish. Romero-Romero indicated on the record that he understood his right to counsel and the Immigration Judge offered him a continuance to retain counsel. Romero-Romero declined this opportunity and indicated he did not wish to postpone the case. The Immigration Judge held the hearing that day.

At the hearing, the Immigration Judge inquired into Romero-Romero's eligibility for relief. This inquiry included questioning Romero-Romero about his length of stay in the United States, family ties and immigration status, criminal history, and his ability to depart voluntarily. Romero-Romero responded to the "multitude of questions" "clearly" and with no indication that he "did not comprehend" what was asked. A.R. 81. He also "expressly" disavowed any fear of returning to Honduras. *Id*. at 80. The Immigration Judge found Romero-Romero removable and ordered him removed to Honduras. Romero-Romero then waived his right to an administrative appeal.

---

[1] Later, Romero-Romero was served with notice of his hearing date, which also apprised Romero-Romero of his right to counsel.

### b. *Romero-Romero's Motion to Reopen*

One week later, through counsel, Romero-Romero filed a motion to reopen his removal proceedings.[2]  With this motion, he also filed an I-589 application asserting eligibility for asylum, withholding of removal, and protection under the Convention Against Torture.  Romero-Romero claimed that during the prior removal hearing, he was "afraid, tired, nervous and not feeling well."  A.R. 87.  Thus, he "mistakenly said that he was not afraid to return to Honduras, even though he is genuinely fearful for his life if he returns."  A.R. 87–88.

Romero-Romero's I-589 application alleged that his eligibility rested on "pa[s]t persecution and likely . . . future persecution" in Honduras.  *Id.* at 88.  He claimed that in December 2012, Honduran police raided the home that he shared with his mother on false charges of hiding illegal weapons.  These police then allegedly "beat[,] tortured, arrested[,] and detained" him and his mother, though they were eventually acquitted in a judicial proceeding four months later**.**  A.R. 96.  Romero-Romero alleged that intimidation by gang members, whom he believed to be working with the police, deterred him and his family from pursuing legal action against the police.

To support his motion to reopen, Romero-Romero attached a declaration from himself and an affidavit from his aunt, Rosa Paz Romero De Cruz.  He also attached a 2019 country conditions report on Honduras from the United States Department of State.  Romero-Romero's declaration reiterated the alleged persecution by police and reasserted

---

[2] Romero-Romero also filed an emergency motion to stay the removal, which the Immigration Judge denied.

that he did not have legal representation at the removal hearing "[d]ue to a misunderstanding." A.R. 102. The affidavit from Rosa Paz Romero De Cruz claimed that Romero-Romero entered the United States in 2013 after he fled Honduras; he would not have admitted the charge of removability if he had been represented by counsel; he endured a "very traumatic experience" with his mother in Honduras; his mother is "still under [the] threat of gangs"; and Romero-Romero "is scared to return to his country." A.R. 106.

Romero-Romero's motion to reopen also argued that a "[c]hange in circumstances" made him eligible for relief. A.R. 99. He claimed that his cousin, Gloria Castro Romero, was recently forced to flee Honduras and that she too was being threatened by the same gang members. This evidence was purportedly "not available at his prior master hearing." A.R. 15. Further, although they remained in Honduras, Romero-Romero claimed that his mother and his "entire family" also recently received threats from the same gang.[3] A.R. 99.

Finally, in addition to eligibility on the merits, Romero-Romero argued that the Immigration Judge should exercise the court's authority to reopen his proceedings sua sponte.

The Immigration Judge denied Romero-Romero's motion to reopen. The Judge's order reviewed the course of events at the removal hearing. These events included Romero-Romero being informed (in his native language) of his right to counsel, then

---

[3] Romero-Romero's application did not provide any dates to contextualize the recency of these threats.

5

furnished with a list of free or low-cost legal service providers. The Judge further recalled that Romero-Romero indicated he understood his rights and "did not wish his case to be continued to locate counsel." A.R. 80. The Judge also reviewed his numerous inquiries, to which Romero-Romero had "responded clearly." A.R. 81. Perhaps most importantly, Romero-Romero "expressly indicated that he had no fear of return to Honduras." A.R. 80. The Immigration Judge, therefore, viewed Romero-Romero's right-to-counsel claim as merely a "change of heart . . . [which did] not justify reopening of the proceedings." *Id.*

The Immigration Judge next held that Romero-Romero's evidence did not establish prima facie eligibility. The Judge explained that Romero-Romero presented no qualifying exception to the one-year limitations period for asylum. He was likewise ineligible for withholding of removal, because his evidence did not show that the harm alleged "was on account of a protected ground." A.R. 81. Further, there was no evidence that the Honduran government was unwilling or unable to provide protection. On the contrary, Romero-Romero was tried, found not guilty, and released. Moreover, there was no indication that the Honduran government was otherwise still interested in him eight years later. He and his mother also chose not to pursue further action against the police.

Finally, the Immigration Judge held that Romero-Romero could not obtain relief under the Convention Against Torture. First, Romero-Romero's declaration did not identify "a public official intent on harming him" or explain why the official would be interested years later and after having been cleared of charges. *Id.* Second, Romero-

6

Romero also failed to include evidence supporting his assertion that gangs were working with the police.

### c. BIA Appeal of the Motion to Reopen

On appeal to the BIA, Romero-Romero advanced the same arguments as presented to the Immigration Judge.[4] The Board rejected each of these arguments.

The BIA explained that Romero-Romero failed to submit evidence that his waiver of counsel and decision to proceed pro se "was anything but knowing, voluntary, and intelligent." A.R. 4. Specifically, no evidence "show[ed] that his testimony was due to any sort of medical condition." *Id.* Further, Romero-Romero's ability to "answer many questions regarding his eligibility for relief . . . through an official Immigration Court interpreter" also undermined his right-to-counsel claim. *Id.* The Board was also unpersuaded by Romero-Romero's claimed eligibility for relief on the merits. Romero-Romero could not show that the documents he submitted "were previously unavailable." A.R. 5. Given the Board's other conclusions, it determined that the Immigration Judge did not err when the Judge declined to reopen the proceedings sua sponte, ***id***. The BIA affirmed the Immigration Judge's ruling in toto.

Romero-Romero timely appealed the Board's decision.[5] We will now deny his petition.

---

[4] Romero-Romero also filed another emergency motion to stay the removal.

[5] Romero-Romero also moved our Court to stay his order of removal pending adjudication of the petition. After temporarily granting the motion, we subsequently vacated the order for failure to sufficiently show prospective success on the merits.

The BIA had jurisdiction under 8 C.F.R. § 1003.2(c) to review Romero-Romero's motion to reopen his removal proceedings. As discussed in section IV.b., *infra*, we lack jurisdiction to review the Board's decision to deny reopening sua sponte. *Darby v. Att'y Gen.*, 1 F.4th 151, 164 (3d Cir. 2021). For the remaining issues, we have jurisdiction to review the final order of the Board pursuant to 8 U.S.C. § 1252(a).

We review the Board's denial of a motion to reopen only for an abuse of discretion. *Yasin v. Att'y Gen.*, 20 F.4th 818, 821 (3d Cir. 2021) (quoting *Guo v. Ashcroft*, 386 F.3d 556, 562 (3d Cir. 2004)). But we review the Board's factual determinations for substantial evidence, *Darby*, 1 F.4th at 159, and its determination of an underlying procedural due process claim de novo, *Hernandez Garmendia v. Att'y Gen.*, 28 F.4th 476, 482 (3d Cir. 2022). Lastly, where the Board expressly adopts the reasoning of the immigration judge, we may review both decisions. *Zhi Fei Liao v. Att'y Gen.*, 910 F.3d 714, 718 (3d Cir. 2018).

## IV

### a. The Agency Properly Denied Romero-Romero's Motion to Reopen.

Motions to reopen are disfavored in removal proceedings, and the Attorney General has "broad discretion" to grant or deny such requested relief. *INS v. Doherty*, 502 U.S. 314, 315 (1992) (quoting *INS v. Rios-Pineda*, 471 U.S. 444, 449 (1985)). Generally, the Board grants motions to reopen "only under compelling circumstances." *Guo*, 386 F.3d at 561. To that end, we will not disturb the Board's ruling unless it is "arbitrary, irrational, or contrary to law." *Id.* at 562 (internal quotation marks omitted)

(quoting *Tipu v. INS*, 20 F.3d 580, 582 (3d Cir. 1994)). Here, the Board did not act arbitrarily, irrationally, or contrary to law; therefore, we will deny the petition as to this ground for relief.

### i. Romero-Romero Failed to Support His Motion with the Necessary Evidence.

Although Romero-Romero writes at length about the underlying merits of his application, our review can begin and end with the evidence that he presented in support of his motion to reopen.[6] A noncitizen's motion to reopen must be accompanied by specific documentation supporting relief. Federal regulations require these motions to present the IJ with "new facts . . . supported by affidavits or other evidentiary material." 8 C.F.R. § 1003.23(b)(3). Importantly, this evidence must be "material and . . . [un]available . . . [or unable to] have been discovered or presented at the former hearing." *Id*. The IJ denied and the Board affirmed the denial of Romero-Romero's motion to reopen because he failed to present new, material, and previously unavailable evidence. We agree.

Romero-Romero submitted a declaration from himself, an affidavit from his aunt, and a country conditions report. This evidence was previously discoverable and could have been presented. The allegations about past persecution in Romero-Romero's declaration could have been made orally to the Immigration Judge. Likewise, his aunt

---

[6] Although we do not discuss, in detail, the merits of Romero-Romero's eligibility for relief, we agree with the Immigration Judge that Romero-Romero's application and motion show neither that the harm alleged was on account of a protected ground nor that the government was unable or unwilling to protect Romero-Romero from the alleged harm.

9

was presumably available to provide an affidavit for the removal hearing held one week earlier or could have been raised as a potential witness during the removal hearing.[7] **A.R. 108.** Finally, the country conditions report Romero-Romero submitted was issued by the State Department in 2019. Romero-Romero's counseled motion to reconsider before the Immigration Judge and his appeal to the BIA provided no explanation as to why his supporting documentation was unable to be discovered or presented at the prior removal hearing.[8]

Romero-Romero's assertion about his cousin does not change our conclusion. Romero-Romero argues that his cousin, Gloria Castro Romero, recently fled Honduras because of the same gang violence perpetrated against his family. He asserts that this information was material "because it shows that the gang members are increasingly persecuting him and his family." Petitioner's Br. at 15–16. He also claims that it was undiscoverable because he "could [not] have been expected to present the evidence of the gangs' recent persecution of his family (including his cousin, Gloria) at [the] hearing." *Id.* at 16. Romero-Romero provided no information about how recently his cousin had allegedly fled the country, so it is unclear whether this information could have been discovered and presented at the prior hearing. However, even if this information was not

---

[7] Romero-Romero's aunt has a Maryland driver's license issued in 2017 and valid until 2024. The record lacked any evidence that his aunt was unavailable one week prior.

[8] Although represented by counsel for his motion to reconsider and on appeal before the BIA, Romero-Romero proceeded pro se at the removal hearing. We discuss his pro se appearance, *infra*, and why it does not change our conclusion in this case.

available before the removal hearing, it still lacks the necessary materiality to support a successful motion to reopen.

Materiality is a "heavy burden" that requires petitioners to "allege facts that 'would be sufficient, if proved, to change the result' of their application." *Khan v. Att'y Gen.*, 691 F.3d 488, 496–97 (3d Cir. 2012) (quoting *Kaur v. BIA*, 413 F.3d 232, 234 (2d Cir. 2005)).  That Romero-Romero's cousin may have recently fled Honduras would not change the result of his prior removal proceeding.  Among other things, the Immigration Judge explained that Romero-Romero failed to show that the harm he alleged was based on a protected ground and that the government of Honduras was unable or unwilling to protect him.

Romero-Romero failed to overcome the procedural hurdle of presenting new, material, and undiscoverable evidence in support of his motion to reopen.  Therefore, the Board did not abuse its discretion when it denied his motion to reopen based on the absence of necessary support.

### ii.  Romero-Romero Received Due Process.

Next, Romero-Romero claims that his proceedings should be reopened, because he did not "waive[] his right to be represented by counsel."  Petitioner's Br. at 10.  We disagree.

It is well settled that "all persons within the territory of the United States are entitled to the protection of the Constitution." *Zadvydas v. Davis*, 533 U.S. 678, 694 (2001) (quoting *Wong Wing v. United States*, 163 U.S. 228, 238 (1896)).  These protections include being afforded due process during removal proceedings. *Hernandez*

11

*Garmendia*, 28 F.4th at 485–86. Though the full scope of the constitutional guarantee is "unsettled[,]" *E.O.H.C. v. Sec'y of the United States Dep't of Homeland Sec.*, 950 F.3d 177, 187 (3d Cir. 2020) (citing *Ponce-Leiva v. Ashcroft*, 331 F.3d 369, 374–75 (3d Cir. 2003)), we have held that it entitles a non-citizen to "some form of right to counsel," *Ponce-Leiva*, 331 F.3d at 374.

The right has also been codified in the Immigration and Nationality Act. 8 U.S.C. § 1229a(b)(4)(A) ("[T]he alien shall have the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing who is authorized to practice in such proceedings . . ."); *see also* 8 U.S.C. § 1362 (stating the same). In addition to this statutory right to counsel, the Attorney General's regulations also require an immigration judge to inform those in removal proceedings of free or low-cost legal services in their area. 8 C.F.R. § 1240.10(a)(2)–(3). These constitutional, statutory, and regulatory guarantees notwithstanding, noncitizens may waive their right to counsel if they do so knowingly, "voluntarily[,] and intelligently." *Richardson v. United States*, 558 F.3d 216, 219–20 (3d Cir. 2009); *see also Brady v. United States*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.").

Substantial evidence supports the finding that Romero-Romero knowingly, voluntarily, and intelligently waived his right to counsel. The record shows that Romero-Romero was informed at least four times of his right to counsel. The Agency also informed Romero-Romero of free or low-cost legal services in writing prior to the

hearing, and the Immigration Judge did so again at the hearing.  When offered the opportunity to retain counsel, Romero-Romero expressly declined and indicated that he did not wish to continue the hearing.  With these steps, the Agency met its obligations to inform and allow Romero-Romero to obtain the assistance of counsel.

Romero-Romero's conduct at the proceeding also undermines his assertion that he misunderstood his right to counsel.  Romero-Romero did not have difficulty communicating with the Immigration Judge.  He "responded clearly to" numerous inquiries and "expressly indicated that he had no fear of return to Honduras."  A.R. 80–81.  On top of this, Romero-Romero effectively communicated through an official court interpreter.  Romero-Romero submitted no evidence with his motion to reopen to support his contention that his tiredness, nervousness, and fear during the removal proceedings prevented him from understanding his right to counsel and the likely consequences of waiver.

Accordingly, the Board did not abuse its discretion when it denied this ground for relief.  We will likewise deny Romero-Romero relief.

**b.  The Board Properly Affirmed the Immigration Judge's Decision to Deny Sua Sponte Reopening. We Decline to Review the Board's Own Refusal to Reopen the Proceedings Sua Sponte.**

Romero-Romero moved for sua sponte reopening before both the Immigration Judge and the BIA.  The BIA affirmed the Immigration Judge's decision to decline reopening Romero-Romero's proceedings sua sponte, then it declined to exercise its own authority to reopen the proceedings sua sponte.  We conclude that there was no error.

13

Contrary to Romero-Romero's assertions, the "totality of the circumstances" did not support the Immigration Judge reopening his proceedings. A.R. 90. Romero-Romero failed to submit evidence that was new, material, and previously unavailable in support of his motion to reopen. *See* 8 C.F.R. § 1003.23(b)(3). Romero-Romero also participated in his hearing via an interpreter; indicated that he understood his right to counsel; declined a continuance to retain counsel; and answered a myriad of questions. These events at the hearing show a knowing, voluntary, and intelligent waiver of his right to counsel. Consequently, there was no error by the Board in affirming the Immigration Judge's ruling.

The Board also did not err when it declined to exercise its own power to reopen the proceedings sua sponte. The BIA has "unfettered discretion" to reopen a proceeding sua sponte. *Pllumi v. Att'y Gen.*, 642 F.3d 155, 159 (3d Cir. 2011). Ordinarily, we lack jurisdiction to review the Board's discretion whether to act pursuant to this authority. *Darby*, 1 F.4th at 164 (quoting *Pllumi*, 642 F.3d at 159 and *Sang Goo Park v. Att'y Gen.*, 846 F.3d 645, 651–52 (3d Cir. 2017)). But, there are two exceptions to this rule: First, we may review the Board's decision when it "relies on an incorrect legal premise." *Id*. (quoting *Sang Goo Park*, 846 F.3d at 651). Second, we may review a decision if the Board makes an "irrational departure" from "settled practice[,]" which "might constitute abuse." *Id*. (quoting *Sang Goo Park*, 846 F.3d at 651–52). Neither of the exceptions apply here.

First, the Board's decision does not rely on "an incorrect legal premise." *Darby*, 1 F.4th at 164. The Board and the Immigration Judge properly determined that Romero-

14

Romero failed to support his motion with the necessary evidence. Substantial evidence also supported the determination that Romero-Romero made a knowing, voluntary, and intelligent waiver of his right to counsel. Second, Romero-Romero advances no argument that the Board "irrational[ly] depart[ed]" from a "settled practice"; nor, can he successfully do so. *Id.*

Because no exceptions apply, we decline to make any further inquiry into the Board's refusal to reopen Romero-Romero's proceedings sua sponte. Therefore, we will also deny the petition based on this ground for relief.

**V**

For the foregoing reasons, we will deny the petition for review. In light of this disposition, Petitioner's second motion for stay of removal is denied.

15