**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2503
_____

D.G.M.,
                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of a Final Order of the
Board of Immigration Appeals
(Agency No. A088-446-835)
Immigration Judge: Walter A. Durling
_____

Argued December 13, 2022

Before: RESTREPO, McKEE, and SMITH, *Circuit Judges*

(Opinion filed: March 1, 2023)

Melissa Syring          [**ARGUED**]
Monica L. Coscia
Omid Nasab
Anthony L. Ryan
Cravath Swaine & Moore
825 Eighth Avenue
Worldwide Plaza
New York, NY 10019
          *Counsel for Petitioner*

Lindsay Marshall          [**ARGUED**]
United States Department of Justice
Office of Immigration Litigation
P.O. Box 848

Ben Franklin Station
Washington, DC 20044
    *Counsel for Respondent*

———————

OPINION[*]

———————


McKEE, *Circuit Judge*:

D.G.M. petitions for review of the Board of Immigration Appeals' decision denying his motion to reopen his removal proceedings in order to reapply for deferral of removal under the Convention Against Torture ("CAT"). Because the BIA did not abuse its discretion in denying the motion to reopen, we will deny the petition for review.[1]

**I.**

The BIA denied D.G.M.'s motion to reopen because evidence he submitted to support his motion demonstrated only a continuation of the country conditions previously presented to the IJ, rather than a material change in these conditions.

Where a motion to reopen is time-barred,[2] an applicant must provide material evidence of changed conditions in the country to which deportation has been ordered that

———————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] *Sevoian v. Ashcroft*, 290 F.3d 166, 174 (3d Cir. 2002) (review of the BIA's denial of a motion to reopen is for abuse of discretion, which means reversal is only warranted if the BIA's decision was "arbitrary, irrational, or contrary to law.").

[2] There is no dispute that D.G.M.'s motion to reopen is time-barred since he filed it more than 90 days after the order of removal became final. *See* 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). D.G.M. filed his motion to reopen on March 5, 2020, two and a half years after the BIA's October 20, 2017, final administrative order.

2

"could not have been discovered or presented at the previous hearing."[3] To determine whether a petitioner has presented material evidence of changed country conditions that was previously unavailable, "we compare the evidence of country conditions submitted with the motion to those that existed at the time of the merits hearing below."[4] "The requirement to present material evidence is a 'heavy burden' [as the evidence must] rebut[] the IJ's finding 'that provided the basis' for denying relief."[5]

D.G.M. argues that the BIA failed to adequately consider—and/or ignored—the new evidence he presented which he contends proves a likelihood that he will be tortured, and that the Jamaican government will acquiesce in his torture if he is returned to Jamaica.[6] To substantiate these claims, he points to "dramatic spikes in homicides"[7] in Jamaica and increased corruption within the Jamaican government and Jamaican Constabulary Force. With respect to corruption, D.G.M. argues that "the Jamaican government is no longer 'actively opposing criminal activity.'"[8] He explains that the

---

[3] 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii);*Zhu v. Att'y Gen.*, 744 F.3d 268, 272 (3d Cir. 2014). *See also Bamaca-Cifuentes v. Att'y Gen. United States*, 870 F.3d 108, 111 (3d Cir. 2017) ("This changed-circumstances regulation effectively creates a procedural hurdle that must be overcome before an untimely motion to reopen may be considered." (internal quotation marks omitted)).

[4] *In re S-Y-G-*, 24 I. & N. Dec. 247, 253 (BIA 2007).

[5] *Darby v. Att'y Gen.*, 1 F. 4th 151, 160 (3d Cir. 2021) (quoting *See Khan v. Att'y Gen.*, 691 F.3d 488, 497 (3d Cir. 2012)).

[6] D.G.M. reads the BIA's decision as if it cabined its analysis to a single document, the 2018 Department of State Report on Jamaica, and therefore argues that the BIA ignored most of the relevant evidence. Although the BIA only discussed the 2018 Department of State Report by name, the BIA stated, "[a]dditionally, [D.G.M.] has not presented sufficient evidence that there has been an increase in persecution in the country." A.R. 2.

[7] Pet'r Br. at 3.

[8] Pet'r Br. at 41 (quoting *D.G.M.*, 803 F. App'x at 647).

3

Department of State's 2018 Report demonstrates that "the Jamaican government and security forces not only turn a blind eye to rampant unlawful killings, but *participate* in many of them,"[9] and other reports demonstrate that killings by law enforcement have increased significantly.

We cannot conclude that the BIA abused its discretion in determining that these conditions were a "continuation" of those occurring in Jamaica as previously presented to the IJ.[10] With respect to an increase in homicides and violence, the evidence presented reflects that Jamaica has experienced a "continued increase in interpersonal violence over the past six decades."[11] Thus, the increase in homicides is not a materially changed condition. D.G.M. argues that the new evidence reflects that the Jamaican government is no longer "actively opposing criminal activity," however, a review of the prior evidence alongside the new evidence establishes that "[t]he issue of corruption [had] haunted the police force [in Jamaica] for decades."[12] Although we are sympathetic to D.G.M.'s

---

[9] Pet'r Br. at 3.

[10] A.R. 2.

[11] A.R. 117. The evidence presented to the IJ in 2017 demonstrated that high rates of homicides are—unfortunately—a persistent issue in Jamaica. *See* A.R. 372 ("Jamaica continued to have one of the highest homicide rates per capita in the world" with a 20% increase in homicide compared to 2014); A.R. 462 (the Department of State's 2016 Human Rights Report stated that "criminal networks, and gangs created a widespread culture of criminality and contributed to the country's very high homicide rate"); A.R. 485 (discussing "recurrent violence" dating back to the 1970s).

[12] A.R. 128. D.G.M. argues that unlike in 2016 when the Jamaican government was "combating narcotics and illicit trafficking," A.R. 480, and "removing officers engaged in corrupt and unethical behavior," A.R. 482, the Jamaican government is no longer charging police officers with abuses. D.G.M. points to the 2018 State Department Report which states "[o]f the cases of security force-related fatalities reported to INDECOM, fewer than 5 percent led to official charges, and fewer than 2 percent led to a conviction."

concerns that he will be tortured if returned to Jamaica and that the Jamaican government will acquiesce to that torture, any changes in Jamaica's country conditions are "incremental or incidental [and therefore] do[] not meet the regulatory requirements for late motions of this type."[13] On this record, therefore, we are not able to reverse the BIA's conclusions.

We must also agree that the BIA did not abuse its discretion in determining that (1) the DEA's 2013 request for deferred action, (2) the DHS's letter granting deferred action and (3) D.G.M.'s 2006 plea agreement and transcript of criminal proceedings constituted a change in personal circumstances rather than country conditions.[14] D.G.M. argues that "a change in personal circumstances *can* be the basis for a motion to reopen based on changed country conditions, so long as the applicant demonstrates that there are

---

A.R. 86-87. While this source may indicate a decrease in official charges and convictions, the problems of security-force fatalities and a lack of government accountability were not new in 2018, as evidenced by the earlier reports reviewed by the IJ. *See* A.R. 461 ("There was also an increased number of fatalities at the hands of government security forces . . . . The government charged a much larger number of police officers with abuses than in the previous year. A lack of willing witnesses and inefficiencies in the judiciary, however, continued to plague the justice system, and trials languished."); *see also* A.R. 480 (stating that the Jamaican government's efforts in 2015 to "combat[] narcotics and illicit trafficking…were only moderately effective in 2015 because of a lack of sufficient resources, corruption, an inefficient criminal justice system, and the inability of lawmakers to adopt meaningful . . . legislation to combat corruption."

[13] *In re S-Y-G-*, 24 I. & N. Dec. 247, 253, 257 (BIA 2007). *See also Bamaca-Cifuentes*, 870 F.3d 108, 113 ("A review of the evidence submitted confirms that it largely dealt with ongoing problems in [the country of origin], and did not provide a basis for finding that there was a material change in conditions.").

[14] *See Matter of C-W-L-*, 24 I&N Dec.346, 351 (BIA 2007) (holding that an applicant is barred from filing an untimely motion to reopen in order to submit an application for protection based on changed personal circumstances).

5

also changed country conditions."[15] However, where, as here, a petitioner has not demonstrated changed country conditions, that argument fails.[16]

## **IV.**[17]

Given that D.G.M. did not present material evidence of changed country conditions, we must deny his motion to reopen his removal proceedings.

---

[15] Pet'r Br. at 42.

[16] In *Liu v. Att'y Gen. U.S.*, 555 F.3d 145, 150 (3d Cir. 2009), we held that even though 8 U.S.C. § 1158(a)(2)(D) could refer to changed personal circumstances, it "allows successive asylum applications only within the 90-day reopening period for orders denying asylum unless the alien can show changed country conditions on the required accompanying motion to reopen." In light of this, we need not consider D.G.M.'s argument that the BIA abused its discretion in determining that the documents from the DEA and DHS were immaterial.

[17] We also need not analyze D.G.M.'s argument that the evidence he presented supports a prima facie claim for deferral of removal under the CAT because he was unable to overcome the procedural hurdle to reopen removal proceedings through the submission of material evidence of changed country conditions. *See Liu.*, 555 F.3d at 151.