**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 21-2955 & 22-2220
_____

HERMENEGILDO GONZALEZ CABRERA,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an
Order of the Board of Immigration Appeals
(Agency No.  A206-194-022)
Immigration Judge:  Mirlande Tadal
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 17, 2023
_____

Before:  CHAGARES, <u>Chief Judge</u>, GREENAWAY, JR. and PHIPPS, <u>Circuit Judges</u>

(Filed: June 14, 2023)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Chief Judge.

Hermenegildo Gonzalez Cabrera ("Gonzalez") petitions this Court to review a decision by the Board of Immigration Appeals ("BIA") dismissing his appeal from the Immigration Judge's ("IJ") order denying asylum, withholding of removal, protection under the Convention Against Torture ("CAT"), and cancellation of removal. He also petitions for review of the BIA's decision denying a motion to reopen and for administrative closure. The petitions have been consolidated. For the reasons that follow, we will deny the consolidated petition for review.

## I.[1]

Gonzalez is a native and citizen of Guatemala. He was born in 1990 and has been in the United States without permission since 2006. He was issued a notice to appear in December 2013 and applied for asylum, withholding of removal, CAT protection, cancellation of removal, and relief under Deferred Action for Childhood Arrivals ("DACA").

Prior to his hearing before the IJ, Gonzalez sought a continuance to resolve a criminal matter against him stemming from a domestic dispute with the mother of his two United States citizen children. The IJ denied a continuance. After the hearing, the IJ denied asylum, withholding, CAT relief, and cancellation of removal. Gonzalez appealed to the BIA, which dismissed his appeal. Gonzalez timely petitioned for review.

---

[1] Because we write for the parties, we recite only those facts pertinent to our decision.

2

The criminal matter later was dismissed. Gonzalez moved to reopen his case with the BIA and requested that his case be administratively closed[2] so he could pursue his DACA application. The BIA denied relief. Gonzalez timely filed a second petition for review.

## II.[3]

To be granted asylum, Gonzalez was required to show, among other things, that he is unable or unwilling to return to Guatemala because of past persecution or a well-founded fear of future persecution on account of a protected ground. See Chavarria v. Gonzalez, 446 F.3d 508, 516 (3d Cir. 2006). Eligibility for withholding of removal is similar but more difficult to satisfy[4]; for that form of relief, Gonzalez was required to

---

[2] Administrative closure is an informal tool used by the BIA to "pause" proceedings and remove them from the docket to await an event relevant to the proceeding but outside the control of the parties. See Arcos Sanchez v. Att'y Gen., 997 F.3d 113, 117–18 (3d Cir. 2021); see also In re Cruz-Valdez, 28 I. & N. Dec. 326, 329 (A.G. 2021) (deciding that the agency had authority to employ administrative closure).

[3] The BIA had jurisdiction over the appeal of the IJ's decision under 8 C.F.R. § 1003.1(b) and the motion to reopen under 8 C.F.R. § 1003.2(c). We have jurisdiction to review the BIA's orders under 8 U.S.C. § 1252(a)(1). Our review generally is limited to the BIA's decision. 8 U.S.C. § 1252; Huang v. Att'y Gen., 620 F.3d 372, 379 (3d Cir. 2010). If, however, the BIA states that it is deferring to the IJ or invokes specific aspects of the IJ's analysis and factfinding, we review both decisions. Thayalan v. Att'y Gen., 997 F.3d 132, 137 (3d Cir. 2021).

[4] A petitioner who fails to establish asylum eligibility necessarily fails to qualify for withholding of removal. Blanco v. Att'y Gen., 967 F.3d 304, 310 (3d Cir. 2020).

show a "clear probability" of persecution in Guatemala. See Blanco v. Att'y Gen., 967 F.3d 304, 310 (3d Cir. 2020).

A.

We begin by considering Gonzalez's claim that he suffered past persecution and is therefore entitled to a presumption of future persecution for his asylum and withholding claims. See Doe v. Att'y Gen., 956 F.3d 135, 141 (3d Cir. 2020) (holding that an asylum applicant who shows past persecution is entitled to a rebuttable presumption of future persecution); Thayalan v. Att'y Gen., 997 F.3d 132, 138 (3d Cir. 2021) (determining that a withholding applicant who establishes past persecution is entitled to a rebuttable presumption of future persecution). To prevail, Gonzalez was required to demonstrate: (1) he was targeted for mistreatment on account of a statutorily protected ground; (2) the mistreatment rose to the level of persecution; and (3) the persecution was committed by the government or by forces the government is unable or unwilling to control. Thayalan, 997 F.3d at 138.

The agency concluded that Gonzalez did not establish mistreatment rising to the level of past persecution. This is a factual determination that we review under the substantial evidence standard. Id. at 137. This standard is highly deferential; if a reasonable factfinder could make the finding on the administrative record, it is supported by substantial evidence. Id.

Gonzalez testified before the IJ that, more than twenty years ago, when he was eight, an MS-13 gang member named Hugo Vasquez attacked his parents with a

4

machete.[5]  Vasquez did not harm Gonzalez but threatened to hurt him if his father were to pursue a complaint against him.  According to Gonzalez, after the machete attack, Vazquez "would threaten [Gonzalez], [and] he would get the gang to hit and assault [Gonzalez]" on his way to school.  Administrative Record ("AR") 254; see also AR 243–44 (testifying that Vasquez threatened Gonzalez "many years ago" when he "was very young"), 244 (testifying that Gonzalez was threatened on the way to school when he was about ten years old).  Gonzalez testified that the threats and assaults occurred on "[s]everal occasions," the last occurring in 2000 when he was nine or ten years old.  AR 244.

Gonzalez stated that he fled Guatemala "[b]ecause [he] felt much fear living there because every time [he] had to go to school [he] had to hide [him]self."  AR 246.  He did not, however, testify to any incidents that occurred between 2000, when the threats and assaults ended, and 2006, when he left the country.[6]  Gonzalez also testified that he has not had any problems with gang members since leaving Guatemala.  Gonzalez did testify to one subsequent incident between Vasquez and his family, which occurred in approximately 2016, when Vasquez ordered gang members to enter his brother's home.

---

[5] The IJ found Gonzalez's testimony credible and "generally consistent" with the record. Administrative Record ("AR") 100.

[6] In his written application for asylum and withholding of removal, Gonzalez stated:  "At the end of 2005 I was threatened by the same gang members asking me to be involved with them or they would kill me for not participating and not being one of them."  AR 670; see also 685 (same).  Gonzalez did not mention a 2005 threat in his testimony before the IJ.  Rather, he testified that he was threatened "[a]pproximately 22 years ago."  AR 243.

5

He testified that no one in his family has had contact with the gang members since that 2016 incident, although his parents and siblings still live in the same town in Guatemala.

On this record, substantial evidence supports the agency's finding that the harm Gonzalez experienced does not rise to the level of past persecution. See Chavarria, 446 F.3d at 515 ("So long as the BIA's decision is supported by reasonable, substantial, and probative evidence on the record considered as a whole, we will not disturb the BIA's disposition of the case." (citation and quotation marks omitted)). The BIA correctly observed that Gonzalez testified to vague threats that took place many years before he left Guatemala. Although Gonzalez did testify that gang members assaulted him several times on his way to school, Gonzalez also testified that he was not harmed and that the encounters ended when he was about ten, long before he fled the country.

Gonzalez contends that the agency ignored favorable evidence that the gang made "explicit death threats" when he was a child, "new threats" when he was a teenager, and then, later, "physical attacks against his parents and brother."[7] Gonzalez Br. 20. A review of Gonzalez's testimony does not support his claim of escalating threats and recent attacks and therefore does not compel relief. Gonzalez testified to assaults on him

---

[7] Gonzalez contends that his status as a minor at the time of the earliest events means that his claim should be analyzed "accordingly," although he does not propose a specific standard. Gonzalez Br. 22–23. Our Court has not decided the degree to which age factors into a past persecution claim. Saban-Cach v. Att'y Gen., 58 F.4th 716, 730 (3d Cir. 2023) ("We have never addressed the degree to which the BIA and IJ are required to consider incidents of claimed past persecution in light of the petitioner's age."). We need not decide here whether to adopt a test involving the petitioner's age because, regardless of Gonzalez's age at the time of the events, substantial evidence supports the agency's conclusion that the harm he experienced did not rise to the level of persecution.

6

many years ago that did not result in physical harm, a series of vague threats that ceased decades ago, a single incident involving an incursion on his brother's property in 2016 but no physical harm to Gonzalez or any members of his family, and an absence of contact between anyone in his family and the gang members for several years.[8]  Such a record does not compel a conclusion that Gonzalez suffered past persecution for purposes of asylum and withholding of removal.

B.

Gonzalez next argues that the agency failed to apply the appropriate legal standard in analyzing whether the threats against him constitute past persecution for asylum and withholding purposes.  The BIA echoed the standard set forth in Chavarria v. Gonzalez, in which we determined that threats rise to the level of persecution when they "are highly imminent and menacing in nature."  446 F.3d at 518.  The BIA observed that Gonzalez provided only a vague description of the threats that occurred when he was young and "provided no evidence to establish that those threats were highly imminent."  AR 4. Gonzalez takes issue with the reference to imminence, contending that threats need not be highly imminent to qualify as persecution under our more recent case law.

Gonzalez is correct that we recently clarified that, despite our use of the phrase "highly imminent" in cases like Chavarria, our primary focus is on whether threats are

---

[8] Before the agency, Gonzalez claimed persecution by his former roommate in the United States, Efrain Monterroso, whom he reported to the police for committing a crime. Before this Court, however, he has not pursued any claims relating to fear of harm by Monterroso.  We therefore deem this aspect of his persecution claim to be abandoned. See Ghana v. Holland, 226 F.3d 175, 180 (3d Cir. 2000) (determining that arguments not presented in briefs to this Court are abandoned).

"concrete and menacing" or likely to result in the harm threatened. Herrera-Reyes v. Att'y Gen., 952 F.3d 101, 108 (3d Cir. 2020). Imminence, we held, is a "misnomer" because the threats need not necessarily "portend immediate harm" or "be in close temporal proximity to other acts of mistreatment." Id.

Although we have clarified the Chavarria standard in Herrera-Reyes, the BIA here correctly quoted the legal standard set forth in Chavarria. Chavarria, as clarified by Herrera-Reyes, is the law of our Circuit.[9] There is no indication that the BIA's use of the phrase "highly imminent" improperly reflects a demand that the threats "be in close temporal proximity to other acts of mistreatment," or otherwise conflicts with the clarification set forth in Herrera-Reyes, 952 F.3d at 108, particularly given that the BIA focused on the description of the threats as vague and having ended many years ago. These facts suggest that the threats were unlikely to result in the harm threatened.[10] See Herrera-Reyes, 952 F.3d at 108 ("[O]ur interest is . . . the likelihood of the harm threatened."). We thus are not persuaded that the BIA's reference to the imminence

---

[9] While it may have been preferable for the BIA to cite the clarification of the standard as set forth in Herrera-Reyes, that opinion was not issued by our en banc Court and therefore did not overrule Chavarria and other cases employing the "highly imminent" phrasing of the standard. See Reich v. D.M. Sabia Co., 90 F.3d 854, 858 (3d Cir. 1996) (holding that, generally, "a panel of this court is bound by, and lacks authority to overrule, a published decision of a prior panel . . . .").

[10] Gonzalez also claims the agency erred by "ignoring substantial country conditions evidence" and credible testimony concerning the Guatemalan government's inability to protect him from persecution. Gonzalez Br. 24. We need not reach this issue because there are other independent grounds for agreeing with the agency that Gonzalez did not establish past persecution or a well-founded fear of future persecution for purposes of his asylum and withholding claims.

portion of the standard as set forth in <u>Chavarria</u> constitutes legal error warranting remand of Gonzalez's past persecution claims.

C.

An applicant for asylum or withholding of removal who fails to show past persecution may nonetheless qualify for relief by showing a well-founded fear of future persecution. See <u>Lukuwago v. Ashcroft</u>, 329 F.3d 157, 174, 182 (3d Cir. 2003). Gonzalez argues that he intended to show a fear of future persecution both because he would be singled out personally for persecution <u>and</u> because he is a member of a group against which there is a "pattern or practice" of persecution in Guatemala. He contends the agency was obligated to consider the "pattern or practice" pathway to relief, and its failure to do so constitutes legal error.[11] Gonzalez Br. 28 (citing <u>Banks v. Gonzales</u>, 453 F.3d 449, 452–53 (7th Cir. 2006)).

The Government argues that Gonzalez never presented a pattern and practice claim to the IJ or BIA. <u>Cf.</u> <u>Ghebrehiwot v. Att'y Gen.</u>, 467 F.3d 344, 353 n.8 (3d Cir. 2006) (observing that a pattern and practice claim could be considered because it had been presented to the BIA and thus was administratively exhausted); <u>see</u> <u>also</u> <u>Thayalan</u>, 997 F.3d at 144 n.5 (holding that we will not fault the IJ for not considering a pattern or practice claim when the applicant did not present one). We agree. Gonzalez failed to

---

[11] Where an applicant establishes a pattern or practice of persecution in his country of a group similarly situated to the applicant, he need not also show that he would be singled out for persecution. 8 C.F.R. § 1208.13(b)(2). The applicant bears the burden of proof for a pattern or practice claim. See <u>Quao Lin Dong v. Att'y Gen.</u>, 638 F.3d 223, 232 (3d Cir. 2011).

9

administratively exhaust the claim. Because the Government has invoked this claims-processing rule, we will not review this administratively unexhausted claim.[12] See 8 U.S.C. § 1252(d)(1); Santos-Zacaria v. Garland, 143 S. Ct. 1103, 1111 (2023) (holding that, subject to principles of waiver and forfeiture, a court may review a final immigration order only if all administrative remedies have been exhausted).

III.

As a CAT applicant, Gonzalez was required to show that he more likely than not would be tortured if removed to Guatemala. 8 C.F.R. § 1208.16(c)(2). The agency was required to address two questions: (1) what is likely to happen if Gonzalez is removed (a finding of fact); and (2) does that amount to the legal definition of torture (a conclusion of law)? See Myrie v. Att'y Gen., 855 F.3d 509, 516 (3d Cir. 2017). To qualify as torture, the act must, among other things, cause severe physical or mental pain or suffering and be caused by or with the acquiescence of a public official. Id. at 515.

Gonzalez claims the BIA failed to follow the framework set forth in Myrie and failed to properly consider the evidence he put forth. These claims lack merit. For essentially the same reasons that he did not establish past or future persecution, Gonzalez

---

[12] Gonzalez also argues that the BIA erred in concluding he did not present sufficient factual evidence of a well-founded fear of persecution. He states, without citing the record, that the BIA ignored future persecution evidence in the record and failed to determine whether he would be harmed on account of his membership in a particular social group. Gonzalez's arguments in this regard are perfunctory and lack legal and factual support. His conclusory statements do not undermine the substantial evidence underlying the agency's determinations.

failed to establish that he experienced past harm or is likely to face future harm that meets the definition of torture. His CAT claim therefore fails under Myrie.

IV.

To obtain cancellation of removal, Gonzalez was required to establish statutory eligibility for that form of relief. Pareja v. Att'y Gen., 615 F.3d 180, 185–86 (3d Cir. 2010). He therefore had to show, among other things, that his removal would result in "exceptional and extremely unusual hardship" to a qualifying U.S. citizen family member — here, his two United States citizen children. 8 U.S.C. § 1229b(b)(1); Pareja, 615 F.3d at 186. We review statutory eligibility de novo and findings of fact for substantial evidence. Khan v. Att'y Gen., 979 F.3d 193, 197 (3d Cir. 2020).

Gonzalez claims the agency did not adequately consider an expert report concerning his children in support of his cancellation claim. The BIA expressly considered the report, however, and nonetheless concluded that the children would not suffer exceptional and extremely unusual hardship if Gonzalez were removed. That determination that is supported by substantial evidence. Gonzalez's disagreement about the weight the report should have been afforded is not a basis for relief.[13] See Thayalan, 997 F.3d at 143 ("The substantial evidence standard does not permit this Court to re-weigh evidence or to substitute its own factual determinations for those of the agency.").

---

[13] Even if Gonzalez were to be statutorily eligible, the Attorney General has the discretion to grant or deny cancellation relief. See Pareja, 615 F.3d at 186. Gonzalez contests the agency's discretionary denial of cancellation in his case. We will not reach this issue, however, because Gonzalez did not establish statutory eligibility for cancellation, and we lack jurisdiction to review this discretionary determination in any event. See Hernandez-Morales v. Att'y Gen., 977 F.3d 247, 249 (3d Cir. 2020).

11

We therefore will not disturb the agency's determination that Gonzalez is statutorily ineligible for cancellation of removal.

V.

Gonzalez challenges several agency rulings on motions and procedural issues. We consider these in turn.

A.

Gonzalez disputes the denial of a continuance to contest his pending criminal charge and to apply for DACA relief. A continuance will be denied where there is an absence of good cause for the request. 8 C.F.R. § 1003.29; Khan v. Att'y Gen., 448 F.3d 226, 233 (3d Cir. 2006). We review the denial for abuse of discretion, and so will reverse only if the denial is arbitrary, irrational, or contrary to law. Id.

The criminal court and the immigration court are separate tribunals and the immigration case had been pending for several years before the start of the criminal case. Moreover, Gonzalez did not provide evidence that the outcome of the criminal hearing had the potential to impact his cancellation application, as he was denied cancellation based on his failure to establish the requisite hardship to a qualifying family member. We therefore see no abuse of discretion in the agency's conclusion that good cause for a continuance was absent.

B.

Gonzalez next claims he should have been granted reopening to present evidence of the dismissal of his criminal charge. He contends that the BIA erred in failing to consider the impact of the dismissal on his cancellation application.

Motions to reopen are reviewed for abuse of discretion.  See Darby v. Att'y Gen., 1 F.4th 151, 159 (3d Cir. 2021).  Here, as with the continuance, reopening to present evidence about the dismissal of the domestic violence charge would not have impacted Gonzalez's statutory ineligibility for cancellation of removal due to his failure to establish the requisite hardship to his children.  The BIA thus acted within its discretion in denying the motion.

Gonzalez also argues that his motion to reopen should have been granted so that he could obtain administrative closure to pursue his DACA application.  The agency considers the following factors in considering administrative closure:  (1) the reason administrative closure is sought; (2) the basis for any opposition to administrative closure; (3) the likelihood the applicant will succeed on in obtaining the relief he is pursuing outside of removal proceedings; (4) the anticipated duration of the closure; (5) the responsibility of either party in contributing to any current or anticipated delay; and (6) the ultimate outcome of removal proceeding when the case ultimately is recalendared. Matter of W-Y-U-, 27 I. & N. Dec. 17, 18 (BIA 2017).  The primary consideration is whether the party opposing administrative closure has provided a persuasive reason for the case to proceed to resolution on the merits.  Id. at 20.

The BIA denied relief on grounds that DACA is "wholly within the purview of the Department of Homeland Security" and because, on the record presented, Gonzalez did not persuade the BIA that relief was warranted.  Supplemental ("Supp.") AR 4.  Gonzalez provided a copy of the DACA application, but left the record unclear as to whether he is entitled to DACA relief.  See Supp. AR 23 (stating that he submitted a DACA application

13

and appending a copy, but not discussing the likelihood of relief). Based on this sparse record, Gonzalez has not established that the BIA acted arbitrarily, irrationally, or contrary to law in declining to grant reopening for administrative closure. See Darby, 1 F.4th at 159 (observing that motions to reopen are disfavored and a denial will not be disturbed unless it is arbitrary, irrational, or contrary to law).

C.

Gonzalez also contests the BIA's decision to employ a single member to review his appeal. A single board member typically reviews an IJ's decision. See 8 C.F.R. § 1003.1(e)(5). An appeal may be considered by a three-judge panel only if, among other things, the IJ's decision "is not in conformity with the law or with applicable precedents," there is need to review a clearly erroneous factual determination by the IJ, there is a need to reverse the IJ, or there is a need to resolve a "complex, novel, unusual, or recurring issue of law or fact." 8 C.F.R. § 1003.1(e)(6)(iii), (v), (vi), (vii). The decision to send a case to a single BIA member is subject to judicial review, must be guided by applicable regulations, and will be overturned only if arbitrary or capricious. Purveegiin v. Gonzales, 448 F.3d 684, 692 (3d Cir. 2006).

Gonzalez claims three-judge review was warranted because his case is complex, the IJ violated precedent, and reversal is mandated. We disagree. For the reasons already discussed, the agency did not violate precedent and reversal is not warranted. The BIA did not act arbitrarily or capriciously by assigning his case to a single member.

14

D.

Gonzalez last contends that the BIA failed to meaningfully consider his appellate arguments. He argues it cannot be ascertained whether the BIA "heard and thought" about his challenges to the IJ's analysis. Gonzalez Br. 17 (citing Matter of A-C-A-A-, 28 I. & N. Dec. 84, 88 (A.G. 2020)). This claim lacks merit. The BIA's decision meaningfully addressed Gonzalez's numerous appellate arguments.[14]

VI.

For the foregoing reasons, we will deny the consolidated petition for review.

---

[14] The BIA notably agreed with several of Gonzalez's arguments, reflecting its consideration of the case. The BIA agreed with Gonzalez that the IJ incorrectly determined that his asylum application was untimely filed, see AR 3 ("[W]e will deem the respondent's Form I-589 to be timely filed based on changed circumstances."), and it accepted Gonzalez's position that he presented cognizable particular social groups, see AR 3 ("We will treat both putative groups as cognizable particular social groups.").

15